# Exhibit D

February 28, 2012

**BY HAND**

Anu Allen
755 Bronx River Road
Bronx, NY 10708

      Re:    **Separation and Release Agreement**

Dear Anu:

     We have prepared this letter agreement ("Agreement") to confirm our mutual understanding regarding the terms and conditions of your separation from employment with Chanel, Inc. ("Company") and the separation package that the Company is hereby offering you, as set forth herein, in connection with the termination of your employment with the Company. These terms and conditions are as follows:

1.    Acknowledgement Regarding Employment. Your last day of employment with the Company will be February 28, 2012 ("Termination Date").

2.    Acknowledgements Regarding Wages. You will be paid your regular wages up to and including the Termination Date. You will also be paid for any vacation time that you have accrued but not used as of the Termination Date in accordance with Company policy. These payments, which will be subject to applicable taxes and withholdings, shall be provided regardless of whether you sign this Agreement. By signing this Agreement, you acknowledge that these payments have been made to you.

3.    Additional Consideration. In return for your signing (and not revoking) this Agreement, which contains a general release of claims ("Release"), as is described in detail under Paragraph 4 below, as well as your agreement to be bound by the other terms and conditions of this Agreement, the Company will provide you with the following additional payments and benefits:

    (a)    You will receive severance pay in the total amount of twenty one thousand seven hundred and eighty nine dollars and twenty cents ($21,789.20), less applicable taxes and withholdings, which represents nineteen (19) weeks of wages at your current base salary, less applicable taxes and withholdings. The foregoing severance payment shall be made to you within fifteen (15) days after the Effective Date (as defined in Paragraph 10) of this Agreement.

    (b)    Provided that you timely elect coverage under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), complete the necessary COBRA

        paperwork and remain eligible for COBRA coverage, the Company shall pay your applicable premiums under COBRA for continued group medical coverage under the Company's existing medical plan and based on your coverage elections at the time of termination on a month-to-month basis for a period of up to five (5) months. Notwithstanding the foregoing, should you become eligible for medical coverage under another group health insurance program or plan, the Company's obligation to pay these premiums shall immediately cease. The Company's obligation is based on your eligibility to participate in another program or plan and not on whether you are actually covered under another program or plan. You agree to promptly notify the Company in writing should you become eligible for medical coverage under another group health insurance program or plan. The payments provided for under this Paragraph 3(b) shall be made following the Effective Date and in accordance with and subject to the above terms.

    (c)    The Company shall retain an outplacement firm of its choosing to provide you with up to four (4) sessions of outplacement services in connection with your efforts to locate and secure new employment following the termination of your employment. This benefit shall be made available to you following the Effective Date.

The payments and benefits set forth under this Paragraph 3 shall be subject to any and all applicable taxes and withholdings. The payments and benefits set forth under this Paragraph 3 are in addition to the payments you will receive under Paragraph 2 above.

You agree that the payments and benefits provided to you in this Paragraph 3: (i) exceed any payment, benefit, or other thing of value to which you might otherwise be entitled under any policy, plan or procedure of or prior agreement with the Company; and (ii) are in full discharge of any and all of the Company's liabilities and obligations to you, whether written or oral.

It is agreed that you are not and shall not be entitled to receive any additional compensation, monies and/or benefits from the Company of any kind other than as expressly set forth under this Paragraph 3; provided, however, that, as noted above under Paragraph 2, regardless of whether you sign this Agreement, you will receive those payments set forth under Paragraph 2. You further acknowledge and agree that the consideration set forth in this Paragraph 3 is adequate and complete consideration for your promises and undertakings under this Agreement, including, but not limited to, your release of claims as set forth in Paragraph 4.

You further understand and agree that the Company is neither providing tax nor legal advice, nor making any representations regarding tax obligations or consequences, if any, related to the payments and benefits paid to you under this Agreement.

4.      General Release of Claims. For and in consideration of the payments and benefits to be provided to you under Paragraph 3 above, you, for yourself and for your heirs, executors, administrators, trustees, legal representatives, successors and assigns (collectively "Releasors"), hereby forever release and discharge the Company, any and all of its past and present parents, subsidiaries, divisions, affiliates, related entities, employee benefit and/or pension plans or funds, successors and assigns and any and all of its and their past and present directors, officers, agents, contractors, trustees, administrators, attorneys, employees and assigns (whether acting as agents for the Company, its affiliates or related entities, or in their individual capacities) (collectively referred to as "Releasees") from any and all claims, demands, causes of action and liabilities of any kind whatsoever, whether known or unknown, by reason of any act, omission, transaction or occurrence, which Releasors ever had, ~~now~~not have or may have against any and/or all of the Releasees up to and including the date you sign this Agreement, ~~including~~excluding, but not limited to, claims of discrimination and harassment on the basis of race, color, national origin, religion, sex, sexual orientation, age, disability and any other legally protected characteristic, claims under the New York State and City Human Rights Laws, New York Labor Law, the Age Discrimination in Employment Act ("ADEA"), the Older Workers Benefit Protection Act ("OWBPA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Civil Rights Act of 1991, the Civil Rights Act of 1866, the Americans with Disabilities Act, ("ADA"), the Employee Retirement Income Security Act of 1974 ("ERISA") (~~excluding~~including claims for accrued, vested benefits under any employee benefit plan of the Company in accordance with the terms of such plan and applicable law), the Worker Adjustment and Retraining Notification Act ("WARN"), the National Labor Relations Act ("NLRA"), the Family & Medical Leave Act ("FMLA") (all as amended) and all other federal, state and local discrimination, labor and wage laws, claims for discrimination, harassment and/or retaliation in employment, as well as claims for breach of contract, wrongful discharge, constructive discharge, retaliation, whistleblower retaliation, defamation, negligence or intentional torts, wages or benefits, including, but not limited to bonuses and other compensation, emotional distress, bodily injury, punitive damages, attorneys' fees and costs, and any and all claims under any contract, statute, regulation, agreement, duty or otherwise. Excluded from the foregoing release of claims above are any claims or rights that cannot be waived by law, claims for enforcement of this Agreement, claims that arise after you sign this Agreement, claims for unemployment and workers' compensation benefits, and your right to file a charge with a government agency (including, without limitation, the U.S. Equal Employment Opportunity Commission) except even if you file such a charge, you have waived your right to recover monetary, compensatory and punitive damages, and to obtain equitable relief with respect to the claims waived in this Paragraph 4.

5.      Confidential Information; Return of Property; Confidentiality; Non-Disparagement.

        (a)     Whether or not you sign this Agreement, you will be required to maintain the confidentiality of business and personal information and trade secrets of the Company and the other Releasees. You further acknowledge that as a result of ~~your~~you employment

with the Company you had access to and became acquainted with the Company's confidential information, records, trade secrets and other information concerning the Company's business and operations and that of the other Releasees, as well as and including personal information concerning the Company and the other Releasees ("Confidential Information"). You acknowledge and agree that all such Confidential Information is the sole and exclusive property of the Company (and/or the other Releasees), regardless of whether you developed such Confidential Information during the course of your employment with the Company, and that you have not and shall not, except as may be required by law, utilize or disclose any such Confidential Information, records or files of the Company (or of any of the Releasees), or any copies thereof, for your own benefit or the benefit of any other person, corporation or other entity.

(b) You also acknowledge that no later than the Termination Date you shall return to the Company all records, files and documents in your custody, possession and control that you have had access to, became acquainted with and/or created during the course and in the scope of your employment with the Company, as well as and including all Confidential Information, and any copies thereof, in whatever form they may be in, as well as any and all other property or equipment of the Company or of any of the other Releasees in your custody, possession, or control, including, but not limited to, Company vehicles, computers, laptops, PDAs, cellular phones, employee IDs, pass cards, keys, and Company products, samples and testers.

(c) You acknowledge and agree that you have not and will not reveal the terms and existence of this Agreement, or the circumstance leading to it, to any third party, other than to your attorney, accountant and/or spouse or domestic partner (each of whom you shall require and ensure to be bound by this confidentiality requirement), to a government entity or agency in connection with any charge or investigation it may conduct or as may otherwise be required by law. Except as required by law, you further agree that you have not and will not communicate with the media or make any public statement, whether orally or in writing, electronically (including, but not limited to, via e-mail) or otherwise, regarding the Company or any of the other Releasees, including, but not limited to, via press interviews or press statements, and/or statements to any newspaper, magazine, television or radio station, website or blog, or posting to any website or blog.

(d) You agree that you have not and will not make or encourage the making of any statements, truthful or otherwise, orally or in writing, or take any actions or encourage the taking of any actions, which in any way disparage, or which could harm, the Company or any of the other Releasees, including, without limitation, the reputation and/or goodwill of the Company or any of the other Releasees.

(e) Nothing in this Agreement precludes you from providing truthful information to any government agency in accordance with or pursuant to your rights under law.

6. <u>Cooperation After Termination.</u> You acknowledge and agree that, on an as-needed basis, you will cooperate and assist the Company, as well as the other Releasees, in connection with any and all matters that you have knowledge of, handled, were responsible for and/or otherwise worked on while employed by the Company. It is acknowledged that such cooperation and assistance may include, but shall not be limited to, making yourself available to the Company's and the other Releasees' attorneys and/or providing the Company and the other Releasees with complete and accurate information regarding the particular matters.

7. <u>Non-Solicitation / Non-Interference.</u> You acknowledge and agree that for a period of one (1) year from the Termination Date you will neither alone nor in concert with others:

(a) Solicit, induce, influence, encourage, or attempt to solicit, induce, influence or encourage, either directly or indirectly, any person employed by the Company to terminate his or her employment relationship with the Company or otherwise interfere with any such person's employment by or association with the Company;

(b) Solicit for employment, hire, or assist in any aspect with the hiring of, whether on your own behalf or on behalf of any third party, any person who is, or within the past six (6) months from the Termination Date has been, an employee, executive, officer, manager, consultant, independent contractor or other agent of the Company;

(c) Induce, influence, encourage, or attempt to induce, influence or encourage, either directly or indirectly, any third party, including, but not limited to, any retailer, vendor, supplier, client or customer, to terminate such party's business relationship with the Company or otherwise damage any business or contractual relationship of the Company; or

(d) Take any other action detrimental to the relationship of the Company with its employees, clients, customers or suppliers.

The parties agree that, in the event that the provisions of this Paragraph 7 hereof are deemed too restrictive in a court proceeding, such court may reduce such restrictions to the extent it deems reasonable under the circumstances; provided that your obligations under this Paragraph 7 are in addition to, and not in lieu of, any restrictions pertaining to the foregoing under applicable law or any other obligations you have under this Agreement.

8. <u>Enforcement.</u> It is agreed that should you commit a breach of Paragraphs 5, 6, or 7 such breach shall be considered a material breach of the Agreement. In the event of a breach or threatened breach, the Company shall have the right and remedy, in addition to any other remedy available in law or equity, to have the provisions of Paragraphs 5, 6 and 7 of this Agreement specifically enforced by any court having equity jurisdiction, it being acknowledged and agreed that any such breach or threatened breach will cause irreparable

5

injury to the Company and that money damages may not provide an adequate remedy to the Company. In addition, in the event of a breach, the Company's obligation to make any payments to you under Paragraph 3 shall immediately cease, and you agree, to the fullest extent permitted by law, to forfeit any payments made to you under Paragraph 3 of this Agreement upon demand by the Company, it being recognized that actual damages for such a breach would be impractical and extremely difficult to remedy. In any action brought by the Company under this provision the Company shall, to the fullest extent permitted by law, be entitled to its reasonable attorneys' fees and costs and be entitled to seek any other damages and relief provided under law or in equity.

9.      <u>Non-Admission; Choice of Law; Jurisdiction; Entire Agreement; Severability</u>. We agree that this Agreement is not intended, and shall not be construed, as an admission by the Company of any violation of federal, state or local law, ordinance or regulation, any breach of contract or of any wrong whatsoever against you. This Agreement shall be construed and enforced in accordance with federal law to the extent applicable or, to the extent federal law is not applicable, the laws of the State of New York, without giving effect to principles of conflict of laws. The parties consent to personal jurisdiction to the federal and state courts in New York, New York. This Agreement constitutes the entire agreement between the parties and supercedes any and all prior agreements and understandings between the parties and may be modified only by a writing signed by both parties. You acknowledge that you are not relying on any oral statements or promises concerning the subject matter of this Agreement in signing this Agreement. If any part or term of this Agreement is held to be unenforceable or ineffective, the validity of the remaining provisions shall not be affected and the other obligations will be enforced as if the Agreement did not contain the invalid part or term.

10.     <u>Time Periods; Legal Advice; Other Acknowledgements.</u> The Company hereby advises you to consult with an attorney of your own choice before signing this Agreement. By signing below, you acknowledge that you have been advised in writing to consult with an attorney of your choice before signing this Agreement and that you have been represented by counsel or you have had the opportunity to consult with counsel and to otherwise consider the terms of this Agreement prior to your signing the Agreement. You further acknowledge that you have read this Agreement in its entirety; that you fully understand all of its terms and their significance; that you have signed it voluntarily and of your own free will; and that you intend to abide by its provisions without exception. You have twenty-one (21) days from receipt of this Agreement within which to consider the terms of this Agreement. By signing below, you acknowledge that you have been given twenty-one (21) days within which to consider the terms of this Agreement. You have seven (7) days to revoke this Agreement after you sign it ("the Revocation Period") by indicating your decision to do so in writing, addressed to the undersigned at Chanel, Inc., 9 West 57th Street, 44th Floor, New York, New York 10019 (fax number 212-303-5728), to be received by the undersigned no later than the seventh (7th) day following the day you signed this Agreement. Provided you timely submit a signed Agreement, and do not revoke the Agreement during the Revocation Period, the Agreement shall become effective on the eighth (8th) day after you sign it ("Effective Date"). If you revoke this

Agreement, you shall not be entitled to the payments and benefits set forth under Paragraph 3 and the Agreement will automatically be deemed null and void.

*     *     *     *

If you agree with the terms and conditions of this Agreement, please sign and date this Agreement below, keep a copy for your files and return the original to me, which, provided you do not revoke it, will constitute a binding agreement between you and the Company following expiration of the Revocation Period.

Sincerely,

Megan Glickman
HR Director

Agreed To and Accepted:

_____
Signature

_____
Print Name

Date: _____