UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                                                                :
ANU ALLEN,                                                      :
                                                                :  **ECF CASE**
                              Plaintiff,                        :
                                                                :  12-CV6758
            - against -                                         :
                                                                :
CHANEL, INC.,                                                   :
                                                                :
                              Defendant.                        :
                                                                :
----------------------------------------------------------------x


# CHANEL, INC.'S MEMORANDUM OF LAW
# IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT


Dated: New York, New York
       November 12, 2012

Lorie E. Almon (LA-4937)
Mary E. Ahrens (MA-2378)
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500

*Attorneys for Defendant Chanel, Inc.*

14998575v.1

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 3

ARGUMENT .............................................................................................................................. 7

I.     RELEVANT GOVERNING LEGAL STANDARDS ....................................................... 7

II.    PLAINTIFF HAS RELINQUISHED HER RIGHT TO FILE CLAIMS AGAINST CHANEL BECAUSE SHE RELEASED SUCH CLAIMS ............................................... 9

      A.     Plaintiff Is Bound by a General Release of Claims Against Chanel ....................... 9

      B.     The Document Title and the Release Clauses in Paragraph 3 of the Agreement Trump the Inconsistent and Fraudulently Modified Language in Paragraph 4 ........................................................................................................ 11

      C.     Plaintiff Ratified the Release Agreement by Accepting Consideration Pursuant to the Agreement ..................................................................................... 13

III.   CHANEL IS ENTITLED TO RECOVERY OF ITS REASONABLE ATTORNEYS' FEES INCURRED IN DEFENDING THIS ACTION ........................... 14

CONCLUSION ......................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*A-Leet Leasing Corp. v. Taurus Trucking Corp.*,
   104 Misc. 2d 741, 429 N.Y.S.2d 527 (Civ. Ct. Kings Cnty. 1980) .........................................11

*Alexander v. Gardner-Denver Co.*,
   415 U.S. 36 (1974), *aff'd*, 519 F.2d 503 (10th Cir. 1975) ........................................................9

*Antonmarchi v. Consol. Edison Co.*,
   2010 U.S. Dist. LEXIS 98241 (S.D.N.Y. Sept. 16, 2010) ..........................................................9

*Atl. Cas. Ins. Co. v. Coffey*,
   2012 U.S. Dist. LEXIS 30960 (W.D.N.Y. Mar. 8, 2012) ...........................................................9

*Burke v. Lash Work Env'ts, Inc.*,
   408 F. App'x. 438 (2d Cir. 2011) ...........................................................................................8, 9

*Cefali v. Buffalo Brass Co.*,
   748 F. Supp. 1011 (W.D.N.Y. 1990) .......................................................................................15

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) .................................................................................................1, 9

*Cheung v. N.Y. Palace Hotel*,
   2005 U.S. Dist. LEXIS 34659 (E.D.N.Y. Sept. 28, 2005) .........................................................8

*Clark v. Buffalo Wire Works Co.*,
   3 F. Supp. 2d 366 (W.D.N.Y. 1998) ........................................................................................13

*Fellerman & Cohen Realty Corp. v. Clinical Plus, Inc.*,
   156 B.R. 379 (E.D.N.Y. 1993) ................................................................................................11

*In re Hirschhorn*,
   156 B.R. 379 (Bankr. E.D.N.Y 1993) .....................................................................................11

*Int'l Audiotext Network v. Am. Tel. & Tel. Co.*,
   62 F.3d 69 (2d Cir. 1995) .........................................................................................................9

*Israel v. Chabra*,
   537 F.3d 86 (2d Cir. 2008) ......................................................................................................11

*Kingsland v. Xerox Corp.*,
   829 F. Supp. 2d 194 (W.D.N.Y. 2011) .................................................................................8, 9

*Lambertson v. Kerry Ingredients, Inc.*,
    50 F. Supp. 2d 163 (E.D.N.Y. 1999) ...................................................................................9

*Lubrizol Corp. v. Exxon Corp.*,
    957 F.2d 1302 (5th Cir. 1992) ..........................................................................................15

*Ofori-Tenkorang v. Am. Int'l Group, Inc.*,
    460 F.3d 296 (2d Cir. 2006)...............................................................................................8

*Pallonetti v. Liberty Mut.*,
    2011 U.S. Dist. LEXIS 14529 (S.D.N.Y. Feb. 11, 2011)..................................................8

*Reid v. I.B.M Corporation*,
    1997 U.S. Dist. LEXIS 8905 (S.D.N.Y. June 24, 1997)..................................................13

*RSL Communs., PLC v. Bildirici*,
    2010 U.S. Dist. LEXIS 22368 (S.D.N.Y. Mar. 5, 2010) ............................................11, 13

*Russomanno v. Murphy*,
    2011 U.S. Dist. LEXIS 17248 (S.D.N.Y. Feb. 16, 2011)..................................................8

*Spectrum Standards, Inc. v. Telnetex, Ltd.*,
    150 Misc. 2d 515, 576 N.Y.S.2d 474 (Sup. Ct. Suffolk Cnty. 1991) .............................11

*Tung v. Texaco, Inc.*,
    150 F.3d 206 (2d Cir. 1998)...............................................................................................8

**STATUTES**

29 U.S.C. § 621...............................................................................................................................7

42 U.S.C. § 1981.............................................................................................................................7

42 U.S.C. § 2000e...........................................................................................................................7

New York State Human Rights Law, N.Y. Exec. L. 290 ...............................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)...........................................................................................................1, 7, 8

Fed. R. Civ. P. 12(c) .................................................................................................................1, 8

Defendant Chanel, Inc. ("Chanel" or "Company") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff Anu Allen's ("Plaintiff") Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) and/or Fed. R. Civ. P. 12(c).[1] In the alternative, Chanel respectfully requests a stay of this proceeding pending resolution of the issue as to whether Plaintiff released the claims asserted in her Complaint when she executed a separation and release agreement with Chanel.

## PRELIMINARY STATEMENT

Plaintiff, a former employee of Chanel, filed a Complaint against Chanel in September 2012, alleging claims of employment discrimination, harassment and retaliation. She did so despite having released all of her claims in exchange for good and adequate consideration. Specifically, Plaintiff's Complaint should be dismissed because, immediately following her termination from employment, Plaintiff executed a separation agreement releasing her claims against Chanel.

In February 2012, Chanel provided to Plaintiff a hard copy of a letter agreement entitled "Separation and Release Agreement" (the "Release Agreement"), which was signed by Megan Glickman, Chanel's Human Resources Director, on behalf of the Company before it was presented to Plaintiff. The Release Agreement set forth the terms and conditions of Plaintiff's separation from the Company.[2] It also advised Plaintiff that if she were to sign and return the

---

[1] For the Court's convenience, a true and correct copy of the Complaint is attached as Exhibit A to the accompanying Declaration of Lorie Almon, dated November 12, 2012 ("Almon Decl.").

[2] A true and correct copy of the Release Agreement is attached to the Almon Declaration as Exhibit B as presented to Plaintiff by Chanel. As discussed *infra* at pages 9 to 10, this Court can and should take judicial notice of the Release Agreement and other documents provided herewith. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

14998575v.1

agreement, which contained a "general release of claims," she would receive additional payments and benefits. Almon Decl., Exh. B, p. 1, ¶ 3.

Plaintiff executed the Release Agreement on March 19, 2012.[3] Upon receipt of the signed Release Agreement and in exchange for Plaintiff's release of her claims, Chanel provided ample consideration to Plaintiff, including but not limited to nineteen weeks of severance pay and additional health care coverage, to which Plaintiff otherwise would not have been entitled. By executing the Release Agreement and accepting the ample consideration provided, Plaintiff relinquished her right to bring any private claims against Chanel, including any private employment-related claims, and surrendered her right to prosecute this action.

Plaintiff will undoubtedly argue that despite her execution of the Release Agreement and her acceptance of valid consideration, she may nevertheless prosecute this action. Plaintiff will likely rely on her unilateral, deceptive alteration of one word in the Release Agreement, whereby she attempted to eviscerate a paragraph describing her general release of claims. Specifically, Page 3 of the Release Agreement was surreptitiously altered, so that the paragraph entitled "General Release of Claims" stated that Plaintiff releases all claims against Chanel "***excluding***, but not limited to, [the identified claims]," rather than "***including***, but not limited to [the identified claims]." *Compare* Almon Decl., Ex. B, p. 3, ¶ 4, line 13 to Almon Decl., Exh. C, p. 3, ¶ 4, line 13.

Plaintiff's fraudulent conduct is troublesome on many fronts. For purposes of this Motion, however, the critical point is that Plaintiff's unilateral modification of the Release Agreement does not negate the fact that she released her claims under the Release Agreement. As set forth below, the Release Agreement's other clauses regarding Plaintiff's release of her

---

[3] A true and correct copy of the Release Agreement as it was returned by Plaintiff is attached to the Almon Declaration as Exhibit C (hereinafter, the "Altered Release Agreement").

claims trump her furtive substitution of one word in the Release Agreement. Indeed, to allow Plaintiff to proceed with this litigation despite her acceptance of the significant monetary and other consideration provided to her by Chanel would violate good public policy. Dismissal is necessary to prevent Plaintiff's unjust enrichment. In short, because Plaintiff released her claims against Chanel, her Complaint fails to state a claim upon which relief may be granted. Therefore, Chanel respectfully requests that the Court grant its Motion and dismiss the Complaint in its entirety and award to Chanel its attorneys' fees and costs incurred in defending this action. In the alternative, Chanel respectfully requests a stay of this proceeding pending resolution of the issue as to whether Plaintiff released the claims asserted in her Complaint by executing the Release Agreement.

## FACTUAL BACKGROUND

Plaintiff was employed by Chanel from on or about May 10, 1993 to on or about February 29, 2012. *See* Complaint ("Compl.") at ¶ 9, 12. On or about February 29, 2012, Chanel terminated Plaintiff's employment. *Id.* at ¶ 12. At the time that Plaintiff was informed that her employment had been terminated, Chanel presented Plaintiff a letter agreement entitled "Separation and Release Agreement," setting forth the terms regarding Plaintiff's separation from Chanel. *Id.* at ¶ 13; *see also* Release Agreement. The Release Agreement was provided to Plaintiff in a non-modifiable hard copy format. The Release Agreement repeatedly and explicitly states, *inter alia,* that Chanel would provide certain consideration, including nineteen weeks of severance pay, to Plaintiff in exchange for Plaintiff's release of claims against Chanel. Specifically, Paragraph 3 of the Release Agreement states in relevant part:

> **In return for your signing (and not revoking) this Agreement, which contains a general release of claims ("Release")**, as is described in detail under Paragraph 4 below, as well as your agreement to be bound by the other terms and conditions of this Agreement, the Company will provide you with the following additional payments and benefits:

> (a) You will receive severance pay in the total amount of twenty one thousand seven hundred and eighty nine dollars and twenty cents ($21,789.20), less applicable taxes and withholdings, which represents nineteen (19) weeks of wages at your current base salary . . .
>
> (b) . . . the Company shall pay your applicable premiums under COBRA for continued group medical coverage under the Company's existing medical plan and based on your coverage elections at the time of termination on a month-to-month basis for a period of up to five (5) months . . .
>
> (c) The Company shall retain an outplacement firm of its choosing to provide you with up to four (4) sessions of outplacement services in connection with your efforts to locate and secure new employment following the termination of your employment . . .
>
> . . .
>
> You agree that the payments and benefits provided to you in this Paragraph 3: . . . **are in full discharge of any and all of the Company's liabilities and obligations to you**, whether written or oral.
>
> . . .
>
> You further acknowledge and agree that the consideration set forth in this Paragraph 3 is adequate and complete consideration for your promises and undertakings under this Agreement, **including, but not limited to, your release of claims** as set forth in Paragraph 4 . . .

*See* Release Agreement at ¶ 3 (emphasis added). Paragraph 4 of the Release Agreement, entitled "General Release of Claims," states that Plaintiff releases her claims against Chanel, including but not limited to the identified claims and notes the few exclusions to the general release:

> For and in consideration of the payments and benefits to be provided to you under Paragraph 3 above, you . . . (collectively "Releasors"), hereby forever release and discharge the Company . . . (collectively referred to as "Releasees") from any and all claims, demands, causes of action and liabilities of any kind whatsoever, whether known or unknown, by reason of any act, omission, transaction or occurrence, which Releasors ever had, now have or may have against any and/or all of the Releasees up to and including the date you sign this Agreement, *including*, but not limited to, claims of discrimination and harassment on the basis of race, color, national origin, religion, sex, sexual orientation, age, disability and any other legally protected characteristic, claims under the New York State and City Human Rights Laws, New York Labor Law, the Age Discrimination in Employment Act ("ADEA"), the Older Workers Benefit Protection Act ("OWBPA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Civil Rights Act of 1991, the Civil Rights Act of 1866, the Americans With Disabilities Act ("ADA"), the Employee Retirement Income Security Act of 1974 ("ERISA") (excluding claims for accrued, vested benefits under any employee benefit plan of the Company in accordance

4

with the terms of such plan and applicable law), the Worker Adjustment and Retraining Notification Act ("WARN"), the National Labor Relations Act ("NLRA"), the Family & Medical Leave Act ("FMLA") (all as amended) and all other federal, state and local discrimination, labor and wage laws, claims for discrimination, harassment and/or retaliation in employment, as well as claims for breach of contract, wrongful discharge, constructive discharge, retaliation, whistleblower retaliation, defamation, negligence or intentional torts, wages or benefits, including, but not limited to bonuses and other compensation, emotional distress, bodily injury, punitive damages, attorneys' fees and costs, and any and all claims under any contract, statute, regulation, agreement, duty or otherwise. **Excluded from the foregoing release of claims above** are any claims or rights that cannot be waived by law, claims for enforcement of this Agreement, claims that arise after you sign this Agreement, claims for unemployment and workers' compensation benefits, and your right to file a charge with a government agency (including, without limitation, the U.S. Equal Employment Opportunity Commission) except even if you file such a charge, you have waived your right to recover monetary, compensatory and punitive damages, and to obtain equitable relief with respect to the claims waived in this Paragraph 4.

*Id.* at p. 3, ¶ 4 (emphasis added). The terms "Releasees" and "Releasors" are used throughout the Release Agreement. *See, e.g.*, *id.* at p. 3-5, ¶¶ 4-6.

The Release Agreement also includes the following relevant provisions:

- "This Agreement . . . may be modified only by a writing signed by both parties." *Id*. at p. 6, ¶ 9.

- "By signing below, you acknowledge that you have been advised in writing to consult with an attorney of your choice before signing this Agreement and that you have been represented by counsel or you have had the opportunity to consult with counsel and to otherwise consider the terms of this Agreement prior to your signing the Agreement. You further acknowledge that you have read this Agreement in its entirety; that you fully understand all of its terms and their significance; that you have signed it voluntarily and of your own free will; and that you intend to abide by its provisions without exception." *Id*. at p. 6, ¶ 10.

Finally, the Release Agreement concludes:

If you agree with the terms and conditions of this Agreement, please sign and date this Agreement below, keep a copy for your files and return the original to me, which, provided you do not revoke it, will constitute a binding agreement between you and the Company following expiration of the Revocation Period.

*Id*. at p. 7.

On or about March 19, 2012, Plaintiff returned the executed Release Agreement. She had, however, covertly altered the third page of the Release Agreement. Substantively, the substituted page is identical to the Release Agreement, except that the term "including" in Paragraph 4, entitled "General Release of Claims," was changed to "excluding"[4]:

> General Release of Claims.  For and in consideration of the payments and benefits to be provided to you under Paragraph 3 above, you, for yourself and for your heirs, executors, administrators, trustees, legal representatives, successors and assigns (collectively "Releasors"), hereby forever release and discharge the Company, any and all of its past and present parents, subsidiaries, divisions, affiliates, related entities, employee benefit and/or pension plans or funds, successors and assigns and any and all of its and their past and present directors, officers, agents, contractors, trustees, administrators, attorneys, employees and assigns (whether acting as agents for the Company, its affiliates or related entities, or in their individual capacities) (collectively referred to as "Releasees") from any and all claims, demands, causes of action and liabilities of any kind whatsoever, whether known or unknown, by reason of any act, omission, transaction or occurrence, which Releasors ever had, not have or may have against any and/or all of the Releasees up to and including the date you sign this Agreement, ***excluding***, but not limited to, claims of discrimination and harassment on the basis of race, color, national origin, religion, sex, sexual orientation, age, disability and any other legally protected characteristic, claims under the New York State and City Human Rights Laws, New York Labor Law, the Age Discrimination in Employment Act ("ADEA"), the Older Workers Benefit Protection Act ("OWBPA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Civil Rights Act of 1991, the Civil Rights Act of 1866, the Americans with Disabilities Act, ("ADA"), the Employee Retirement Income Security Act of 1974 ("ERISA") (including claims for accrued, vested benefits under any employee benefit plan of the Company in accordance with the terms of such plan and applicable law), the Worker Adjustment and Retraining Notification Act ("WARN"), the National Labor Relations Act ("NLRA"), the Family & Medical Leave Act ("FMLA") (all as amended) and all other federal, state and local discrimination, labor and wage laws, claims for discrimination, harassment and/or retaliation in employment, as well as claims for breach of contract, wrongful discharge, constructive discharge, retaliation, whistleblower retaliation, defamation, negligence or intentional torts, wages or benefits, including, but not limited to bonuses and other compensation, emotional distress, bodily injury, punitive damages, attorneys' fees and costs, and any and all claims under any contract, statute, regulation, agreement, duty or otherwise. Excluded from the foregoing release of claims above are any claims or rights that cannot be waived by law, claims for enforcement of this Agreement, claims that arise after you sign this Agreement, claims for unemployment and workers' compensation benefits, and your right to file a charge

---

[4] The Altered Release Agreement contains a few other alterations, which are not relevant to the instant Motion.  For the Court's convenience, a true and correct copy of a comparison between the Release Agreement and the Altered Release Agreement is attached to the Almon Declaration as Exhibit D.

6

> with a government agency (including, without limitation, the U.S. Equal Employment Opportunity Commission) except even if you file such a charge, you have waived your right to recover monetary, compensatory and punitive damages, and to obtain equitable relief with respect to the claims waived in this Paragraph 4.

Altered Release Agreement at p. 3, ¶ 4 (emphasis added). Except for this one covert modification, the Altered Release Agreement is substantively identical to the Release Agreement, including the release provisions in Paragraph 3, the modification provision in Paragraph 9 and the other provisions set forth above.

Plaintiff received all of the benefits promised under the Release Agreement. Specifically, Chanel provided Plaintiff with nineteen weeks of severance; Chanel paid for the continuation of Plaintiff's health insurance coverage; and Chanel provided Plaintiff with the opportunity to receive outplacement services.[5]

Plaintiff then filed the instant Complaint, alleging discrimination, harassment and retaliation relating to her employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, *et seq.*, the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, *et seq.*, and the New York State Human Rights Law, N.Y. Exec. L. 290, *et seq.* As set forth below, these are some of the very same employment claims that were finally and fully settled pursuant to the Release Agreement and which Plaintiff expressly relinquished in exchange for the benefits paid by Chanel.

## ARGUMENT

**I. RELEVANT GOVERNING LEGAL STANDARDS**

Fed. R. Civ. P. Rule 12(b)(6) permits the Court to dismiss a complaint that fails to state a claim upon which relief can be granted. On a motion to dismiss under Rule 12(b)(6), the Court

---

[5] Proof of consideration is attached to the Almon Declaration as Exhibit E.

must accept as true all of the factual allegations contained in the complaint and "draw all reasonable inferences in plaintiff's favor." *Ofori-Tenkorang v. Am. Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006). Nevertheless, the issue as to whether Plaintiff's claims are barred by a valid release is properly placed before the Court on a Fed. R. Civ. P. 12(b)(6) motion. *See, e.g., Kingsland v. Xerox Corp.*, 829 F. Supp. 2d 194, 201 (W.D.N.Y. 2011) (granting the defendant's motion to dismiss under Rule 12(b)(6) because the plaintiff's claims were barred by a valid release of claims); *Burke v. Lash Work Env'ts, Inc.*, 408 F. App'x. 438, 441 (2d Cir. 2011) (remanding the case to the district court because "whether the defendants' . . . claims are extinguished by the Settlement Agreement and Release are questions whose resolution is properly addressed by the District Court on a Rule 12(b)(6) motion.").

In the alternative, the issue of whether a claim has been relinquished may also be presented in a motion brought pursuant to Fed. R. Civ. P. 12(c). *See Pallonetti v. Liberty Mut.*, 2011 U.S. Dist. LEXIS 14529, at *4 (S.D.N.Y. Feb. 11, 2011) (granting the defendant's Rule 12(c) motion for judgment on the pleadings because the plaintiff had signed a valid release barring her claims); *Cheung v. N.Y. Palace Hotel*, 2005 U.S. Dist. LEXIS 34659, at *4-5 (E.D.N.Y. Sept. 28, 2005) (granting the defendant's Rule 12(c) motion because the plaintiff signed a release barring her claims); *Tung v. Texaco, Inc.*, 150 F.3d 206, 207 (2d Cir. 1998) (affirming the district court's dismissal of the plaintiff's complaint on the grounds that the plaintiff had signed a release, and this waiver of his right to sue was binding); *Russomanno v. Murphy*, 2011 U.S. Dist. LEXIS 17248 (S.D.N.Y. Feb. 16, 2011) (dismissing under Rule 12(c) the plaintiff's claims because the agreement he signed was a waiver of his claims in the case).

Finally, in determining the sufficiency of Plaintiff's claims, the Court can and should consider the documents provided herewith. It is well-settled in the Second Circuit that

documents in Plaintiff's possession and/or of which she had knowledge may be incorporated by reference into a Complaint and considered by the Court in connection with a motion to dismiss. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.") (quoting *Int'l Audiotext Network v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995); *Atl. Cas. Ins. Co. v. Coffey*, 2012 U.S. Dist. LEXIS 30960, at *4-5 (W.D.N.Y. Mar. 8, 2012) ("In deciding a motion to dismiss . . . , the court may consider, inter alia, documents that the plaintiff attached to the pleadings, documents referenced in the complaint, and documents that plaintiff relied on in bringing the action."); *see* Compl. at ¶ 13.

## II. PLAINTIFF HAS RELINQUISHED HER RIGHT TO FILE CLAIMS AGAINST CHANEL BECAUSE SHE RELEASED SUCH CLAIMS

### A. Plaintiff Is Bound by a General Release of Claims Against Chanel

Plaintiff has surrendered her right to prosecute her claims against Chanel by virtue of her execution of and acceptance of consideration under the Release Agreement. It is well-established that employees may be bound to waivers of claims that they might have otherwise asserted against their former employers. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 & n.15 (1974), *aff'd*, 519 F.2d 503 (10th Cir. 1975); *Burke v. Lash Work Env'ts, Inc.*, 408 F. App'x. 438, 441 (2d Cir. 2011); *Kingsland v. Xerox Corp.*, 829 F. Supp. 2d 194, 201 (W.D.N.Y. 2011). Public policy in fact favors informal settlement of employment claims. *See Antonmarchi v. Consol. Edison Co.,* 2010 U.S. Dist. LEXIS 98241, at *5 (S.D.N.Y. Sept. 16, 2010) (asserting that there is a "strong public policy in favor of settlement"); *Lambertson v. Kerry Ingredients, Inc.*, 50 F. Supp. 2d 163, 170 (E.D.N.Y. 1999) (upholding the terms of a General Release that an

9

employee signed upon her termination, and noting "the strong public policy in favor of enforcing such a release").

Here, the Release Agreement could not have been more clear that Chanel's consideration to Plaintiff was being proffered only in exchange for her release of claims against the Company. Notably, the document is entitled "Separation and Release Agreement." Paragraph 3 of the Agreement reemphasizes the purpose of the Release Agreement, stating *inter alia*:

> **In return for your signing (and not revoking) this Agreement, which contains a general release of claims ("Release")**, as is described in detail under Paragraph 4 below, as well as your agreement to be bound by the other terms and conditions of this Agreement, the Company will provide you with the following additional payments and benefits: . . .
>
> You agree that the payments and benefits provided to you in this Paragraph 3: . . . **are in full discharge of any and all of the Company's liabilities and obligations to you**, whether written or oral . . .
>
> You further acknowledge and agree that the consideration set forth in this Paragraph 3 is adequate and complete consideration for your promises and undertakings under this Agreement, **including, but not limited to, your release of claims** as set forth in Paragraph 4 . . .

Release Agreement at p. 1-2, ¶ 3 (emphasis added). Plaintiff was encouraged to take time to consider the Release Agreement and consult with an attorney,[6] and was given ample time to revoke the Release Agreement if she so elected. *Id.* at p. 6-7, ¶ 10. Because Plaintiff entered into the Release Agreement conceding and settling all claims she had against Chanel relating to her employment (aside from her improper effort to avoid her commitment by secretly altering the agreement), she should not be permitted to pursue identical claims in this action. Indeed, to

---

[6] It is unclear whether Plaintiff's present counsel advised her on the Release Agreement. It would seem certain, however, that he did not advise her to change unilaterally the word "including" to "excluding," as to have done so would have violated his professional responsibilities. *See N.Y. Rules of Professional Conduct* Rule 8.4(c) ("A lawyer or law firm shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation.")

10

permit otherwise would allow Plaintiff to be unjustly enriched and would be contrary to good public policy.

    **B.    The Document Title and the Release Clauses in Paragraph 3 of the Agreement Trump the Inconsistent and Fraudulently Modified Language in Paragraph 4**

Plaintiff likely will argue that she did not release her claims against Chanel because the Release Agreement's third page was modified in such a way that it eviscerates her general release of claims. Such an argument fails. Where inconsistent clauses in a contract exist such that they cannot stand together, the first clause in the contract is given effect and the latter is rejected. *See, e.g., Israel v. Chabra*, 537 F.3d 86, 101 (2d Cir. 2008) ("New York common law of contracts establishes that upon finding that two contractual provisions are irreconcilable, a court must give effect to the provision that appears first in the contract and disregard those irreconcilable provisions that appear subsequently therein"); *RSL Communs., PLC v. Bildirici*, 2010 U.S. Dist. LEXIS 22368, at *14-15 (S.D.N.Y. Mar. 5, 2010) (quoting *A-Leet Leasing Corp. v. Taurus Trucking Corp.*, 104 Misc. 2d 741, 429 N.Y.S.2d 527, 530 (Civ. Ct. Kings Cnty. 1980) ("It is the general rule that if two clauses of an agreement are so totally repugnant that they cannot stand together, the first of such clauses in the contract shall be received and the subsequent one rejected."); *Fellerman & Cohen Realty Corp. v. Clinical Plus, Inc.*, 156 B.R. 379, 387 (E.D.N.Y. 1993) ("If two clauses of an agreement are so at odds to each other they cannot stand together, the clause which is first in the contract will be given effect and the other clause rejected.") (internal citations omitted); *In re Hirschhorn*, 156 B.R. 379, 387 (Bankr. E.D.N.Y 1993) (same); *Spectrum Standards, Inc. v. Telnetex, Ltd.*, 150 Misc. 2d 515, 576 N.Y.S.2d 474, 475 (Sup. Ct. Suffolk Cnty. 1991) (same). Furthermore, courts have found this rule of construction especially appropriate where, as here, the first contractual provision is consistent with the contract's remaining terms and overall purpose. *RSL Communs., PLC*, 2010

11

U.S. Dist. LEXIS 22368, at *15 (holding that the first provision of the contract "should be given effect over the subsequent, inconsistent definition, especially where such a construction yields the only plausible reading of the contract as a whole.").

Here, Plaintiff's deceptive alteration of the Release Agreement, unilaterally modifying the General Release provision in Paragraph 4, was ineffective in materially changing the general release provisions under the Agreement. As set forth above, the Agreement is entitled "Separation and Release Agreement," and Paragraph 3 of the Agreement explicitly and repeatedly states that Chanel agrees to provide Plaintiff with the identified consideration in return for Plaintiff's agreement to release her claims against Chanel. Release Agreement at p. 1-2, ¶ 3 ("In return for your signing (and not revoking) this Agreement, **which contains a general release of claims** ("Release") . . . You agree that the payments and benefits provided to you in this Paragraph 3: . . . **are in full discharge of any and all of the Company's liabilities and obligations to you**, whether written or oral . . . You further acknowledge and agree that the consideration set forth in this Paragraph 3 is adequate and complete consideration for your promises and undertakings under this Agreement, **including, but not limited to, your release of claims** as set forth in Paragraph 4.)

Because of Plaintiff's unilateral and surreptitious modification, Paragraph 4 of the fraudulently modified Altered Release Agreement states that Plaintiff is releasing her claims against Chanel "excluding, but not limited to [the identified claims]." Altered Release Agreement at 4. Setting aside the fact that the fraudulently modified language is not grammatically correct and arguably renders Paragraph 4 meaningless and the inclusion of the paragraph in the contract therefore illogical, this clause in Paragraph 4 is inconsistent with the first three clauses in Paragraph 3, which explicitly state that Chanel's agreement is based on

12

Plaintiff's release of her claims. It is similarly inconsistent with the last sentence of Paragraph 4, which identifies the matters that Chanel actually intended to exclude from the General Release of Claims paragraph. With Plaintiff's modification, the last sentence would be rendered meaningless, as her modification purports to make the General Release of Claims meaningless.

Therefore, because these provisions are so inconsistent such that they cannot stand together, the title of the document and the first clause, which is in Paragraph 3, should be given effect and the Agreement interpreted as releasing Plaintiff's claims against Chanel, as it was of course intended. In fact, giving effect to the first contractual provision, and not the second, "yields the only plausible reading of the contract as a whole." *RSL Communs., PLC*, 2010 U.S. Dist. LEXIS 22368, at *15.

### C. Plaintiff Ratified the Release Agreement by Accepting Consideration Pursuant to the Agreement

Plaintiff also may argue that the Release Agreement is voidable. However, Plaintiff is foreclosed from asserting that the Release Agreement, which includes a general release, is not valid because she accepted and retained the consideration that she received pursuant to the contract; namely, the severance pay and health benefits. *See, e.g.*, *Clark v. Buffalo Wire Works Co.*, 3 F. Supp. 2d 366, 371 (W.D.N.Y. 1998) ("Ratification is an act by which an otherwise voidable and, as a result, invalid contract is confirmed, and thereby made valid."); *Reid v. I.B.M Corporation*, 1997 U.S. Dist. LEXIS 8905, at *30 (S.D.N.Y. June 24, 1997) ("Even if plaintiff's naked claims of incapacity could permit a rational trier of fact to find that he had been subjected to undue influence or economic duress . . . he would still not prevail because plaintiff has ratified the Release by accepting its benefits – approximately $28,000 – and failing to tender back or return these funds.").

13

It would be manifestly unfair to allow Plaintiff to ignore her commitment to fully settle and release all claims – that she attempted to escape through her fraudulent actions – after she received the benefits paid by Chanel pursuant to the Agreement. Chanel complied with the terms of the Agreement by paying Plaintiff nineteen weeks of severance, by paying for the continuation of her health insurance for five additional months, and by providing her with the opportunity for outplacement services. Chanel took these actions under the Agreement based on the reasonable understanding that Plaintiff had agreed to release her claims against the Company, as stated in the signed hard copy document presented to her. Chanel handed Plaintiff a non-modifiable version of the Release Agreement, which stated that Plaintiff should sign and return it, if she agreed with the terms. Plaintiff returned a signed hard copy, which was substantively identical except for the effect of one altered word.

As set forth above, the Agreement unequivocally makes clear that it necessarily included a general release of claims. Plaintiff has enjoyed the benefits of the bargain and should not now be permitted to blithely disregard her agreement and bring this Complaint challenging the very same employment claims that she already settled and waived. Indeed, to permit otherwise would constitute unjust enrichment of Plaintiff at Chanel's expense. The fact that Chanel has even had to take the time and expense to file this motion is denying it the benefit of this bargain, and further unjust enrichment of Plaintiff should not be countenanced. The Complaint should be dismissed and, as discussed below, Chanel should be awarded its attorneys' fees and costs.

### III. CHANEL IS ENTITLED TO RECOVERY OF ITS REASONABLE ATTORNEYS' FEES INCURRED IN DEFENDING THIS ACTION

As set forth above, Plaintiff released all legal claims that she might have had against Chanel as of March 19, 2012 in the Release Agreement, despite the fact that she tried to skirt her obligation through fraudulent means. Plaintiff's lawsuit against Chanel, therefore, has been

14

brought in obvious breach of the Release Agreement and Plaintiff's release of her claims against Chanel. Plaintiff's blatant disregard for her promises – in exchange for which she was given severance pay, continuing health benefits and outplacement services – entitles Chanel to recover the costs and fees that it has incurred because of her obvious breach. *See, e.g., Lubrizol Corp. v. Exxon Corp.*, 957 F.2d 1302, 1306-07 (5th Cir. 1992) (applying New York law and determining that attorneys' fees were appropriate where plaintiff's breach of the covenant not to sue was obvious); *Cefali v. Buffalo Brass Co.,* 748 F. Supp. 1011, 1026-27 (W.D.N.Y. 1990) (awarding attorneys' fees to defendant where plaintiff brought suit in obvious breach of the covenant not to sue). Therefore, Chanel respectfully requests that it be awarded its reasonable costs and the attorneys' fees incurred in defending this action.

## CONCLUSION

For the foregoing reasons, Chanel respectfully requests that the Court grant its motion to dismiss the Complaint in its entirety and award to Chanel such other and further relief as the Court may deem just and proper, including costs and reasonable attorneys' fees incurred in

14998575v.1

defending this action.  In the alternative, Chanel respectfully requests a stay of this proceeding pending resolution of the issue as to whether Plaintiff released the claims asserted in her Complaint when she executed the Release Agreement with Chanel.

Dated: New York, New York
   November 12, 2012

            SEYFARTH SHAW LLP

            By:  /s/ Lorie E. Almon
            Lorie E. Almon (LA-4937)
            lalmon@seyfarth.com
            Mary E. Ahrens (MA-2378)
            mahrens@seyfarth.com
            620 Eighth Avenue, Suite 3200
            New York, New York 10018
            (212) 218-5500

            *Attorneys for Defendant Chanel, Inc.*