UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANU ALLEN,

                                   Plaintiff,                    12 CV 6758 (RPP)

                 - against -                               **OPINION AND ORDER**

CHANEL INC.,

                                   Defendant.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

On September 6, 2012, Plaintiff Anu Allen ("Allen") filed this action against her former employer, Chanel, Inc. ("Chanel"), alleging employment discrimination, harassment, and wrongful termination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., the Civil Rights Act of 1866, 42 U.S.C. § 1981, et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, et seq. Plaintiff seeks compensatory and punitive damages, including back pay, front pay, and lost benefits, as well as recoupment of her legal costs.

On November 12, 2012, Defendant, based on a "Separation and Release Agreement" alleged to have been executed by the parties, moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted or, alternatively, pursuant to Rule 12(c) for judgment on the pleadings. Plaintiff submitted answering papers on December 4, 2012. Defendant submitted its reply papers on December 10, 2012. Oral argument was held on December 13, 2012.

For the reasons discussed below, Defendant's motion to dismiss is converted to a motion for summary judgment and denied.

1

I.      Facts[1]

Beginning on or about May 10, 1993, Defendant first employed Plaintiff as the main executive receptionist at Defendant's corporate headquarters.  (See Compl. ¶ 9; Def.'s Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Mem.") at 3.)  Subsequently, she became the Office Services Coordinator, and later, the Samples Coordinator for the Fashion Division.[2]  (See id. ¶¶ 11-12.)  Plaintiff alleges that she suffered and reported multiple instances of discrimination during her employment.  On or about February 28, 2012, Defendant terminated Plaintiff's employment with the company.[3]  (See id ¶ 12; Def.'s Mem. at 4.)

Upon terminating Plaintiff, Defendant presented Plaintiff with "a hard copy of a letter agreement titled 'Separation and Release Agreement,'" (the "Chanel Separation and Release Agreement"), dated February 28, 2012.  (Def.'s Mem. at 1; see also Tr. of Oral Arg. on Def.'s Mot. to Dismiss ("Tr.") at 11, Dec. 13, 2012.)  The Chanel Separation and Release Agreement is styled as a letter from the Defendant to the Plaintiff setting forth the terms and conditions of Plaintiff's separation from the company.  (See Def.'s Mem. at 1-2; Tr. at 11.)  The Chanel Separation and Release Agreement stated that Plaintiff's "regular wages up to and including the Termination Date . . . [as well as unused] vacation time . . . shall be provided [to you] regardless of whether you sign this Agreement."  (Decl. of Laurie E. Almon ("Almon Decl."), Ex. B ¶ 2, ECF No. 10.)

---

[1] Pursuant to the standard for summary judgment motions, all facts are construed in favor of the non-moving party, here the Plaintiff.  See Vergara v. Bentsen, 868 F. Supp. 581, 589 (S.D.N.Y. 1994).

[2] Plaintiff's Complaint alleges that the changes in her position constituted negative employment actions due to her age, race, sex, or appearance; that her employment opportunities were impaired because of ongoing discrimination based upon her age, race, and sex; and that she was harassed because of her age, race, and sexual orientation. (Compl. ¶¶ 10, 20.)

[3] Defendant contends that Plaintiff was terminated becaued the Samples Coordinator position had been eliminated. (Def.'s Mem. at 4.)  Plaintiff alleges that the Samples Coordinator position still exists, and that her termination was motivated, at least in part, by her complaints of discrimination.  (Compl. ¶¶ 14, 16, 25, 28.)

The Chanel Separation and Release Agreement granted Plaintiff a separation payment somewhat in excess of what she would have otherwise received under her employment contract in exchange for Plaintiff's acceptance of the terms and conditions outlined in the Chanel Separation and Release Agreement.  (See Almon Decl., Ex. B ¶¶ 2-3; see also Def.'s Mem. at 1-2.)  Specifically, Paragraph 3 of the Chanel Separation and Release Agreement, which is entitled "Additional Consideration," states:

> In return for your signing (and not revoking) this Agreement, which contains a general release of claims, . . . as is described in detail under Paragraph 4 below, . . . the Company will provide you with the following benefits: [. . .] You agree that the payments and benefits provided to you in this Paragraph 3 . . . are in full discharge of any and all of the Company's liabilities and obligations to you . . . and complete consideration for your promises and undertakings under this Agreement, including, but not limited to, your release of claims as set forth in Paragraph 4 . . . .

(Almon Decl., Ex. B ¶ 3.)  In turn, Paragraph 4 of the Chanel Separation and Release Agreement, which is entitled "General Release of Claims," states that Plaintiff releases her claims against the company, "including, but not limited to" the causes of action listed in Paragraph 4.  (Id. ¶ 4 (emphasis added).)  Specifically, Paragraph 4 declares that:

> For and in consideration of the payments and benefits to be provided to you . . . , you . . . hereby forever release and discharge [Defendant] . . . from any and all claims . . . including, but not limited to, claims of discrimination and harassment on the basis of race, color, . . . sex, sexual orientation, age, . . . and any other legally protected characteristic . . . and any and all claims under any contract, statute, regulation, agreement, duty or otherwise.

(Id. (emphasis added).)  The Chanel Separation and Release Agreement explicitly states that it "may be modified only by a writing signed by both parties."  (Almon Decl. Ex B ¶ 9; see also Def.'s Mem. at 5.)

3

The Chanel Separation and Release Agreement was pre-signed by Defendant's representative before it was presented to Plaintiff.  (See Def.'s Mem. at 1; Tr. at 11.)  Under the heading "Agreed to and Accepted," a blank space was left for Plaintiff to sign, if she "agree[d] with the terms and conditions of this Agreement."  (Almon Decl., Ex. B at 7; see also ¶ 10.)  The document provides Plaintiff with twenty-one days to consider its terms and seven days to revoke it after signing.  (See Almon Decl., Ex. B ¶ 10.)  The Chanel Separation and Release Agreement became "effective on the eighth (8th) day after [Plaintiff] sign[ed] it."  (Id.)  The Chanel Separation and Release Agreement advises Plaintiff to "consult with an attorney of [her] choice before signing this Agreement."  (Almon Decl. Ex. B ¶ 10; see also Def.'s Mem. at 5.)

On or about March 19, 2012, Plaintiff initialed each page, signed the last page, and returned to Defendant a full version of the Separation and Release Agreement.  (See Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Mem.") at 1; Def.'s Mem. at 2; see also Almon Decl., Ex C.)  Before initialing, signing, and returning the agreement to Defendant, however, Plaintiff retyped page three and altered the content of Paragraph 4 ("General Release of Claims").  (See Almon Decl., Ex. D; see also discussion supra at 3.)  Prior to the list of potential discrimination and harassment claims covered by Paragraph 4, Plaintiff's version ("Plaintiff's Release") changed the first two letters of the word "including" to read "excluding."  (See Pl.'s Mem. at 1; Def.'s Mem. at 2.)  Thus, Paragraph 4 of Plaintiff's Release states, in relevant part:

> For and in consideration of the payments and benefits to be provided to you . . . , you . . . hereby forever release and discharge [Defendant] . . . from any and all claims . . . excluding, but not limited to, claims of discrimination and harassment on the basis of race, color, . . . sex, sexual orientation, age, . . . and any other legally protected characteristic . . . and any and all claims under any contract, statute, regulation, agreement, duty or otherwise.

(Almon Decl., Ex. C ¶ 4 (emphasis added); see also Almon Decl., Ex. D ¶ 4 (comparing the Chanel Separation and Release Agreement and Plaintiff's Release).)  Despite this material change to its content preserving Plaintiff's right to bring the listed claims, Paragraph 4 of Plaintiff's Release remains titled "General Release of Claims."  (See Almon Decl., Ex. C ¶ 4.)

Plaintiff inputted her small but materially significant change by retyping the entire third page of the Chanel Separation and Release Agreement using the same fonts, margins, and words. (See Def.'s Reply Mem. of Law in Further Supp. of Mot. to Dismiss ("Def.'s Reply") at 2; Tr. at 5, 12, 16-17; compare Almon Decl., Ex. B, with id., Ex. C.)  Other than the substitution of "excluding" for "including" in Paragraph 4 on page three, Plaintiff made no other material changes to the Chanel Separation and Release Agreement.[4]  (See Almon Decl., Ex D.)  Indeed, like the Chanel Separation and Release Agreement, Plaintiff's Release remains styled as a letter from the Defendant to the Plaintiff and carries the same date on its first page.  (See id.)

There is no dispute that Plaintiff did not contact Defendant to discuss any changes to the terms of the Release prior to signing and returning it.  (See Def.'s Reply at 2, 5, 8; Tr. at 5, 15-17, 19.)  Instead, Plaintiff asserts that, after making her changes to the Release, she initialed the lower right hand corner of each page but "placed a small 1 inch yellow sticky note on page 3 line 13 where the changes to the Agreement were made."[5]  (Pl.'s Mem., Ex. A (Decl. of Pl., Dec. 4

---

[4] Plaintiff's Release contains three other changes that are not material to the scope of Plaintiff's waiver in this case. For example, although  Plaintiff changed the word "excluding" to "including" prior to a list of possible claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), (see Almon Decl., Ex. D ¶ 4), Plaintiff has not asserted any claims against the Defendant under ERISA in the instant action, although she was terminated just a few months short of twenty years with the company.  (See Compl. ¶¶ 34-53.)  The other two changes to the language of the Chanel Separation and Release Agreement appear to be typographical errors.  (See Def.'s Mem. at 6 n.4.) Specifically, on page three, Plaintiff changed the word "now" to "not," and the word "your" to "you." (Almon Decl., Ex. D ¶¶ 4-5.)  Neither party argues that these changes are material.  (See Def.'s Mem. at 7; Tr. at 12.)

[5] Defendant argues that Plaintiff's declaration is inadmissible because it was electronically signed.  (See Def.'s Mem. at 4; Def.'s Reply at 4; Tr. at 19-20, 22 (citing Local Rule 13.16 (non-attorney signatures must be signed in ink and scanned)).)  Plaintiff's counsel offered to upload a scanned version of Plaintiff's declaration signed in ink. (See Tr. at 24-26.)  For the purposes of the present motion, where the facts are construed in favor of the non-moving

2012 ("Pl.'s Decl.")) ¶ 5; <u>see also</u> Tr. at 12, 15-16.)  Plaintiff does not, however, allege that she wrote anything on the blank sticky note or anywhere else to indicate its purpose on the page. (<u>See</u> Def.'s Reply at 2; Tr. at 22.)

Defendant claims to have neither received the sticky note nor noticed Plaintiff's alterations.  (<u>See</u> Def.'s Reply at 9; Def.'s May 31, 2013 Let., Ex. A (Aff. of Megan Glickman ("Glickman Aff.")) ¶ 3).  Defendant only noticed that Plaintiff signed the agreement.  (<u>See</u> Def.'s Reply at 8.)  As Defendant "was not aware of . . . the purported change made to the [Chanel] Settlement and Release Agreement by Ms. Allen," (Def.'s May 31, 2013 Let., Glickman Aff. ¶ 4), Defendant did not inform Plaintiff that it objected to her unilateral modifications, (<u>see</u> Pl.'s Mem. at 1).  Defendant claims that its Human Resources department did not have "the authority to bind Chanel to pay substantial severance in exchange for no meaningful release," (Def.'s May 31, 2013 Let., Ex. A ¶ 3.)

Subsequent to receiving Plaintiff's signed Release, Defendant sent – and Plaintiff received and retained – a check ("Severance Payment"), dated April 12, 2012, made out to the Plaintiff from the Defendant in the amount of $14,940.19, covering nineteen weeks of severance pay, less witholdings.  (<u>See</u> Almon Decl., Ex. E; Def.'s Mem. at 7; Def.'s Reply at 5.) Approximately five months after receipt of the Severance Payment, on September 6, 2012, Plaintiff brought the instant discrimination and harassment action against Defendant. (<u>See</u> Compl.)

---

party, the Court accepts Plaintiff's declaration as signed.  <u>See</u> S.D.N.Y.'s Elec. Case Filing Rules and Regulations, R. 8.5 ("Documents requiring signatures . . . must be electronically filed either by: (a) submitting a scanned document . . . <u>or</u> (d) <u>in any other manner approved by the Court</u>") (emphasis added).

## II.    Procedural Posture

Defendant's motion seeks dismissal of Plaintiff's Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted or, alternatively, under Rule 12(c) as a motion for judgment on the pleadings.  (See Def.'s Mem. at 7-9.)  In support of its motion to dismiss, the Defendant submitted as exhibits the Chanel Separation and Release Agreement, (Almon Decl., Ex. B), and Plaintiff's Release, (Almon Decl., Ex. C).  The Defendant also submitted a document, ("Redline Comparison"), comparing the Chanel Separation and Release Agreement and Plaintiff's Release and highlighting the differences between them.  (Almon Decl., Ex. D)  In addition, the Defendant submitted a copy of Plaintiff's Severance Payment, purporting to establish that the Plaintiff received compensation from the Defendant as outlined by the parties' Severance Agreement.[6]  (Almon Decl., Ex. E.)

Plaintiff argues, however, that these four exhibits are outside the scope of her Complaint.  (See Pl.'s Mem. at 4-5.)  Accordingly, Plaintiff contends that if the Court chooses to rely upon these materials, Rule 12(d) requires the court to treat Defendant's motion as one for summary judgment under Rule 56, not as a motion to dismiss under Rule 12.  (Id.)

### A.  Consideration of the Defendant's Exhibits

In deciding a Rule 12 motion, a court may only consider the complaint itself or any matters that are subject to judicial notice by the court.  Byrd v. City of New York, No. 04 CV 1396, 2005 WL 1349876, at *1 (2d Cir. June 8, 2005) (discussing Rule 12(c)); Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (discussing Rule 12(b)(6)).  The complaint is deemed to include any attached exhibits, statements, or documents incorporated into the complaint by reference, as well as any documents that are "integral" to the complaint.

---

[6] Subsequently, in a letter to the Court dated May 31, 2013, Defendant submitted a fifth exhibit: an affidavit from Megan Glickman, the Director of Human Resources at Chanel.  (See Def.'s May 31, 2013 Let., Ex. A.)

Chambers, 282 F.3d at 152-53; see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991).

When extraneous materials are presented to the court in conjunction with a Rule 12 motion, the court must either exclude these materials or convert the motion to one for summary judgment.  Fed. R. Civ. P. 12(d); see Chambers, 282 F.3d at 154.  Courts have considerable discretion in deciding between these two options.  See Fed. R. Civ. P. 12(d); Byrd, 2005 WL 1349876, at *2 (encouraging explication of this choice "whatever course of action [the district court] chooses"); see also Gross Foundation, Inc. v. Goldner, No. 09 CV 8804, 2012 WL 6021441, at **5, 12 (E.D.N.Y. Dec. 4, 2012); Russomanno v. Murphy, No. 09 CV 8804, 2011 WL 609878, at **3-5 (S.D.N.Y. Feb. 16, 2011).

Here, the fundamental issue in Defendant's motion to dismiss is whether or not Plaintiff released her claims of discrimination.  (Def.'s Mem. at 1; Pl.'s Mem. at 1.)  In order to make this determination, the Court must decide which – if either – Release governs and whether Plaintiff waived her rights to bring suit on her claims knowingly, willfully, and voluntarily.  See Bormann v. AT&T Communications, Inc., 875 F.2d 399, 402 (2d Cir. 1989).  Answering these questions requires the Court to review the agreed upon facts pertaining to the parties' behavior and the documents they exchanged.

However, the Chanel Separation and Release Agreement, Plaintiff's Release, the Redline Comparison, and the Severance Payment, (collectively, "Defendant's Exhibits"), (Almon Decl., Ex.'s B-E), were not attached to the Plaintiff's Complaint, and neither party argues that these materials are subject to judicial notice under Rule 201 of the Federal Rules of Evidence.  See Fed. R. Evid. 201; see also Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991).

Consequently, for these exhibits to be considered on the present motion, they must either be incorporated in, or integral to, the Plaintiff's Complaint.  See Chambers, 282 F.3d at 152-53.

### 1.  Documents Incorporated by Reference

For incorporation by reference, a complaint "must make a clear, definite, and substantial reference" to the documents.  Helprin v. Harcourt, 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003). "A mere passing reference or even references, however, to a document outside of the complaint, does not, on its own" suffice to incorporate it.  Williams v. Time Warner, Inc., 440 Fed. App'x. 7, 9 (2d Cir. 2011); see also Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989).  Multiple references to, and lengthy quotations from, an outside document have been considered sufficiently substantial to incorporate the document into the complaint by reference.  See Helprin, 277 F. Supp. 2d at 330-31.

Plaintiff's Complaint does not reference either the Severance Payment or the Redline Comparison.[7]  As a result, neither may be deemed incorporated by reference.

The Chanel Separation and Release Agreement and Plaintiff's Release, however, are referenced once in the Complaint:

> 13.    Upon information and belief, [D]efendant terminated [P]laintiff on the grounds that her position of Samples Coordinator for the Fashion Division had been eliminated and demanded that Plaintiff execute a general release agreement which Plaintiff refused to sign without making chan[g]es[,] which changes were made specifically retaining to Plaintiff the right to seek redress in this Court for the outrageous actions exercised against Plaintiff by Defendant.

 (Compl. ¶ 13 (emphasis added).)  Plaintiff's reference to the original and amended Separation and Release agreements is both clear and definite.  See Helprin, 277 F. Supp. 2d at 330-31.

---

[7] The Redline Comparison appears to have been created by Defendant "for the Court's convenience" only after Plaintiff filed her Complaint.  (See Def.'s Mem. at 6, n.4.)  Accordingly, Plaintiff could not have referred to the Redline Comparison in her pleading.

However, given that the Plaintiff makes only a single passing reference to the Releases and does not quote from either one, (Compl. ¶ 13), Plaintiff's reference is not substantial in the context of the entire Complaint.  See Thomas v. Westchester Cnty. Health Care Corp., 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002) ("refer[ring] briefly in one paragraph" of a complaint does not incorporate a document by reference for consideration of a Rule 12(b)(6) motion).  Accordingly, the Chanel Separation and Release Agreement and Plaintiff's Release are not incorporated into the Complaint by reference.  See Williams, 440 Fed. Appx. at 9; Cosmas, 886 F.2d at 13; Westchester Cnty., 232 F. Supp. 2d at 276.

### 2.  Documents Integral to the Complaint

The Court may also consider extraneous materials if they are determined to be integral to the Plaintiff's Complaint.  A document is only integral to a complaint, however, "where the complaint relies heavily upon its terms and effect."  Chambers, 282 F.3d at 153 (internal quotation marks omitted); see also Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 71-72 (2d Cir. 1995) (alleged Sherman Act violation, based upon an agreement between the defendant and a third party, made that agreement integral to the plaintiff's complaint); Cortec, 949 F.2d at 44-48 (allegation of securities fraud, based upon certain documents, made those documents integral to the complaint).

This exception has been deemed narrow in scope.  Williams, 440 Fed. Appx. at 9 ("narrow exception [recognized for] . . . a document upon which the complaint solely relies and which is integral to the complaint") (alteration in original) (internal quotation marks omitted); see also Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).  The Second Circuit has stressed that actual reliance on the extraneous material is required, and that this exception will not be

satisfied by the Plaintiff's "mere notice or possession" of such material.  See Chambers, 282 F.3d at 153.[8]

Here, Defendant has not shown that Plaintiff relied on the Chanel Separation and Release Agreement, Plaintiff's Release, the Redline Comparison, or the Severance Payment in framing her discrimination complaint.  While Defendant's Exhibits may be relevant to the issue of waiver, none of Defendant's Exhibits relate to the substance of Plaintiff's discrimination claims. (See Compl. ¶¶ 1-2, 9-53.)  Thus, none of Defendant's Exhibits are integral to the Complaint, and the Court may not consider them in the context of a motion to dismiss.  See Fed. R. Civ. P. 12(d); Williams, 440 Fed. Appx. at 9; Chambers, 282 F.3d at 153; see also Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 156 (2d Cir. 2006)..

**B.  Conversion to a Motion for Summary Judgment**

Given that the Court must consider materials outside the pleadings in order to address the fundamental question raised by Defendant's motion – whether or not Plaintiff waived her right to assert the present discrimination claim against Defendant – the Court hereby exercises its discretion, pursuant to Rule 12(d), to convert Defendant's  motion to dismiss into one for summary judgment.  See Fed. R. Civ. P. 12(d);  see also Byrd, 2005 WL 1349876, at *2; Russomanno, 2011 WL 609878, at *6 (converting a motion to dismiss to a motion for summary judgment in order to consider a release of discrimination claims on substantially the same facts as the present case); Ridinger v. Dow Jones, 717 F. Supp. 2d 369, 370 (S.D.N.Y. 2010) aff'd 651 F.3d 309 (2d Cir. 2011) (converting a motion to dismiss to a motion for summary judgment

---

[8] The Defendant argues that the fact that Plaintiff  had notice of the two Releases prior to filing her Complaint is sufficient reason for the Court to consider them in the context of Defendant's motion to dismiss.  (Def.'s Mem. at 9; Def.'s Reply at 3, n.1 (citing to Cortec, 949 F.3d at 48)).  While Defendant is correct that a lack of notice is one of the underlying reasons that motions to dismiss are converted into motions for summary judgment, see Cortec, 949 F.2d at 48, such notice is only significant "where a plaintiff has actual notice . . . and has relied upon these documents in framing the complaint."  Id. (emphasis added).  Defendant has not shown such reliance.

because of the moving parties' reliance on a separation agreement, which was outside the scope
of the complaint).

### C.  Consequences of Conversion

Before converting a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary
judgment, a district court must give "sufficient notice to [the non-moving] party and an
opportunity for that party to respond."  <u>Groden v. Random House, Inc.</u>, 61 F.3d 1045, 1052 (2d
Cir. 1995).  The notice inquiry is essentially "whether the appellant should reasonably have
recognized the possibility that the motion might be converted into one for summary judgment or
was taken by surprise and deprived of a reasonable opportunity to meet facts outside the
pleadings."  <u>In re G. & A. Books, Inc.</u>, 770 F.2d 288, 294-95 (2d Cir. 1985).

Here,  by order dated May 15, 2013, the Court notified the parties of its intention to
construe Defendant's Rule 12 motion to dismiss as a Rule 56 motion for summary judgment and
invited the parties to submit supporting affidavits and/or exhibits if there were additional facts
outside the pleadings that the parties wished the Court to consider.[9]  (<u>See</u> Order, May 15, 2013,
ECF No. 18.)  In response, Plaintiff resubmitted the December 4, 2012 declaration she originally
filed with her opposition to Defendant's motion.  (<u>See</u> discussion <u>supra</u> at note 5.)  By letter
dated May 31, 2013, Defendant submitted an affidavit from Megan Glickman, Director of
Human Resources for Defendant.  (<u>See</u> Def.'s May 31, 2013 Let., Glickman Aff.)

---

[9] On the issue of notice, it was Plaintiff who initially suggested that the material attached by the Defendant could
only be considered by the Court on a motion for summary judgment.  (<u>See</u> Pl.'s Mem. at 4-5 (discussing the
possibility of conversion).)  Plaintiff further discussed the possibility of converting the Defendant's motion to one
for summary judgment during oral arguments.  (<u>See</u> Tr. at 18-19.)  In addition, the Defendant's attachment of
extrinsic material to its motion to dismiss constituted sufficient notice to Plaintiff of the possibility of conversion.
<u>See</u> <u>In re G. & A. Books</u>, 770 F.2d at 295 (citing <u>Cook v. Hirschberg</u>, 259 F.2d 56, 57-58 (2d Cir. 1958) (plaintiffs
had notice of the possibility of conversion to summary judgment because the defendants filed affidavits in support of
their motion to dismiss)).  Moreover, Plaintiff directly responded to Defendant's Exhibits in her opposition papers,
(<u>see</u> Pl.'s Mem. at 2-3, 6-9), which included a sworn affidavit that contained new factual assertions beyond the
scope of her Complaint, (<u>see</u> Pl.'s Mem., Ex. A; <u>see also</u> discussion <u>supra</u> at note 5), and at oral argument, (<u>see</u> Tr. at
11-18.)

Plaintiff "cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, . . . etc., in support of and in opposition to a motion to dismiss."  See In re G. & A. Books, 770 F.2d at 295.  Plaintiff is therefore not prejudiced by the Court's conversion of the Defendant's motion to dismiss to one for summary judgment because she had notice of this possibility and an opportunity to respond to the additional material submitted by the Defendant. See Groden, 61 F.3d at 1052; In re G. & A. Books, 770 F.2d at 294-95.

## III.    Legal Standard

On a motion for summary judgment, the moving party bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010).  If the moving party makes such a showing, the non-moving party "may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that" specific facts show a genuine issue for trial.  Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (internal quotation marks omitted); see also Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324.

To decide the present motion, the Court must determine if the parties entered into an enforceable contract in which Plaintiff knowingly, willfully, and voluntarily waived the discrimination claims she now brings.[10]  See Livingston v. Adirondack Beverage Co., 141 F.3d 434, 438 (2d Cir. 1998) (Title VII claims); Bormann, 875 F.2d at 402-03 (ADEA claims); see

---

[10] A party seeking to enforce a purported settlement agreement – here, Defendant – carries the burden of proof to demonstrate that the parties entered into such an agreement.  See Benicorp Ins. Co. v. National Medical Health Card Systes, Inc., 447 F. Supp. 2d 329, 335 (S.D.N.Y. 2006).

also <u>Bachiller v. Turn on Prods., Inc.</u>, No. 00 CV 8701, 2003 WL 1878416 at *3 (S.D.N.Y.

2003) (Civil Rights Act of 1866 claims).

        Courts weigh the following factors when considering whether, according to the totality of

the circumstances, federal discrimination claims[11] were waived knowingly, willfully, and

voluntarily:

> 1) the plaintiff's education and business experience, 2) the amount
> of time the plaintiff had possession of or access to the agreement
> before signing it, 3) the role of plaintiff in deciding the terms of the
> agreement, 4) the clarity of the agreement, 5) whether the plaintiff
> was represented by or consulted with an attorney, . . . 6) whether
> the consideration given in exchange for the waiver exceeds
> employee benefits to which the employee was already entitled by
> contract or law, [7] whether [the] employer encourages or
> discourages [the] employee to consult an attorney . . . and [8]
> whether the employee had a fair opportunity to do so.

<u>Id.</u> (citing <u>Bormann</u>, 875 F.2d at 403) (alterations in original). "These factors are not exhaustive,

nor must they all be satisfied."  <u>Id.</u> at *4.

        Waivers of ADEA claims must clear an additional hurdle.  In addition to satisfying the

factor test detailed above, waivers of ADEA claims must also meet the statutory requirements of

the Older Worker Benefits Protection Act ("OWBPA"), 29 U.S.C. § 626(f); <u>see also</u> <u>Tung v.</u>

<u>Texaco, Inc.</u>, 150 F.3d 206, 208-09 (2d Cir. 1998).  The OWBPA requires, in relevant part, that:

> (A) the waiver is part of an agreement between the individual and
> the employer that is written in a manner calculated to be
> understood by such individual, or by the average individual
> eligible to participate; (B) the waiver specifically refers to rights or
> claims arising under this chapter; (C) the individual does not waive
> rights or claims that may arise after the date the waiver is executed;
> (D) the individual waives rights or claims only in exchange for
> consideration in addition to anything of value to which the

---

[11] Any waiver meeting the federal standard also meets the requirements for a release with respect to Plaintiff's state law claim under the NYSHRL.  <u>See</u> <u>Bachiller v. Turn on Products, Inc.</u>, 86 Fed.Appx. 465, 466 n.2 (2d Cir. 2004) (affirming the dismissal of NYSHRL claim while noting the standard is "less stringent than those applied to [Plaintiff's] federal claims").

individual already is entitled; (E) the individual is advised in writing to consult with an attorney prior to executing the agreement; (F)(i) the individual is given a period of at least 21 days within which to consider the agreement; . . . [and] (G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired[.]

29 U.S.C. § 626(f)(1).

## IV.   Discussion

Both parties agree that Plaintiff waived some of her claims against Defendant following her termination, pursuant to the terms of their agreement.   The parties disagree, however, as to whether the Chanel Separation and Release Agreement or Plaintiff's Release contains the terms of their agreement, and thus they disagree about the scope of Plaintiff's waiver.  (<u>See</u> Def.'s Mem. at 10 ("Release Agreement conced[ed] and settl[ed] <u>all claims</u> [Plaintiff] had against Chanel relating to her employment") (emphasis added); Pl.'s Mem. at 6 ("the Agreement [is] a <u>partial release only</u>") (emphasis added).)  The parties' briefs focus on the question of which version of the release – if either – should be applied by the Court.  For the reasons stated below, however, the Court need not address this issue.

Neither party contends that Plaintiff's waiver was unknowing, unwillful, or involuntary. (<u>See</u> Def.'s Mem. at 10; Pl.'s Mem. at 6.)  Indeed, neither party's brief addresses this issue. Nevertheless, given the public policy concerns animating the waiver requirement, the Court must assess whether Plaintiff's waiver satisfies the relevant standards.

Applying the factors described above favors a finding that Plaintiff knowingly and voluntarily waived her claims.[12]  In this case, however, rote application of the factors is

---

[12] Indeed, although the Court has no information about Plaintiff's education, she amassed business experience by working for Defendant in a professional setting for almost nineteen years. (<u>See</u> Compl. ¶¶ 9, 12.)  Plaintiff possessed

inappropriate and misleading.  The factors are a minimum bar that must be cleared for a waiver

to be knowing and voluntary, but the Court must consider the totality of the circumstances.  See

Reid v. IBM Corp., No. 95 CV 1755, 1997 WL 357969, at *4 (S.D.N.Y. June 26, 1997).

 Here, by changing the word "including" to "excluding" prior to the list of claims covered

by the Chanel Separation and Release Agreement before signing the agreement and returning it

to Defendant, Plaintiff manifested an intent to preserve her right to file a discrimination claim.

Thus, Plaintiff did not knowingly, willfully, and voluntarily waive her right to file a

discrimination claim, regardless of whether the Chanel Separation Release Agreement, Plaintiff's

Release, or neither represents the agreement of the parties.  See Livingston, 141 F.3d at 438;

Bormann, 875 F.2d at 402-03; Bachiller, 2003 WL 1878416 at *3; Tung, 150 F.3d at 208-09.

Consequently, Defendant has failed to show that Plaintiff waived the claims she raises in her

Complaint.

## IV. Conclusion

 For the foregoing reasons, the Defendants' converted motion for summary judgment is

denied without prejudice.  This decision on a Court-converted motion for summary judgment

should not be deemed a bar to either party filing a motion for summary judgment at the close of

discovery.

IT IS SO ORDERED.

---

the Chanel Separation and Release Agreement for nineteen days before signing it, (see Pl.'s Mem. at 2; Almon
Decl., Ex. C. at 7), had the opportunity to seek alterations, (see Almon Decl., Ex. B ¶¶ 9-10), and had seven days
after executing the agreement to revoke her acceptance, (see id. ¶ 10.)  The Chanel Separation and Release
Agreement is clear in all respects, including the steps for accepting, modifying, or rejecting the agreement, and is
written in a manner calculated to be understood by Plaintiff.  (See id.)  The agreement specifically states the claims
encompassed by the waiver.  (See id. ¶ 14.)  In exchange for her waiver, the Chanel Separation and Release
Agreement offered Plaintiff additional consideration that she was not otherwise entitled to under the terms of her
employment contract.  (See id. ¶ 3).  Finally, Plaintiff was encouraged in writing to consult with an attorney before
returning her waiver to Defendant, (see id. ¶ 10), and it appears that Plaintiff did so, (Tr. at 14.)

Dated:  New York, New York
      June 4, 2013

                                                    Robert P. Patterson, Jr.
                                                    U.S.D.J.

**<u>Copies of this Opinion and Order were sent to:</u>**

<u>Plaintiff's Counsel:</u>

    Christopher H. Thompson
    The Law Offices of Christopher Thompson
    33 Davison Lane East
    West Islip, NY 11795
    (631) 983-8830
    Fax: (631) 983-8831

<u>Defendant's Counsel:</u>

    Lorie Elizabeth Almon
    Seyfarth Shaw L.L.P.
    620 Eighth Avenue
    New York, NY 10018-1405
    (212) 218-5517
    Fax: (212) 218-5526