UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ANU ALLEN,                                          :
                                                    :
                              Plaintiff,            :          **ECF CASE**
                                                    :
        - against -                                 :          12-CV-6758-RPP
                                                    :
CHANEL, INC.,                                       :
                                                    :
                              Defendant.            :
-------------------------------------------------------------------x


**CHANEL, INC.'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**




Dated: New York, New York
        November 13, 2014




Lorie E. Almon
Caitlin S. Ladd
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500

*Attorneys for Defendant Chanel, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................... 1

STATEMENT OF UNDISPUTED FACTS ...................................................... 2

A. THE PARTIES............................................................................................. 2

B. ALLEN'S IS HIRED AND PROMOTED CHANEL ........................................ 3

C. ALLEN APPLIES FOR AND IS SELECTED AS SAMPLES COORDINATOR
IN CHANEL'S FASHION WHOLESALE DIVISION ...................................... 3

D. DEMOGRAPHICS OF FASHION WHOLESALE ......................................... 4

E. ALLEN'S RELATIONSHIP WITH KLEIN IN THE WORKPLACE............................. 4

F. FASHION WHOLESALE IS RESTRUCTURED UNDER ZERNIK ............................. 5

G. THE SAMPLES COORDINATOR POSITION IS ELIMINATED ................................. 5

H. ALLEN'S EMPLOYMENT IS TERMINATED............................................... 6

I. ALLEN'S GENERAL COMPLAINTS TO ZERNIK AND HUMAN
RESOURCES ................................................................................................. 6

J. ALLEN UNILATERALLY MODIFIES THE SEPARATION AGREEMENT
PRESENTED TO HER WITHOUT CHANEL'S KNOWLEDGE OR
AGREEMENT ................................................................................................. 7

K. THIS LAWSUIT............................................................................................ 9

ARGUMENT ......................................................................................................... 9

A. THE APPLICABLE SUMMARY JUDGMENT STANDARD ........................................ 9

B. ALLEN'S DISCRIMINATION CLAIMS SHOULD BE DISMISSED ......................... 10

    1. Allen Cannot Prove a Prima Facie Case of Discriminatory Discharge ............... 12

        a) Other Employees of Same Protected Classes Not Adversely
Affected Negates Any Inference of Discrimination ................................. 14

        b) Allen's Age and Sex Discrimination Claims Are Significantly
Undermined By The Fact That She is Younger Than and the Same
Sex As The Decision-makers..................................................................... 15

        c) Klein Was Not A Decision-maker ........................................................... 15

i

d)     Alleged Comments Are Stray Remarks .................................................... 16

e)     Former Chanel Employees Identified In The Complaint Are Not Similarly Situated and Allen Has No Personal Knowledge Concerning Their Employment With or Departures From Chanel........... 16

2.     The Elimination of the Samples Coordinator Position Was A Legitimate, Non-Discriminatory Business Reason For Her Termination................................ 17

3.     Allen Has No Evidence That Chanel's Reason For Terminating Her Employment Were False And That The Real Reason Was Discrimination ........ 18

C.     ALLEN CANNOT ESTABLISH A PRIMA FACIE CASE OF RETALIATION ......... 19

1.     Allen Did Not Engage In Protected Activity ......................................... 20

2.     Cirkva Had No Knowledge of Allen's Complaints to Zernik and Human Resources ........................................................................... 20

3.     Allen Cannot Prove a Causal Connection Between Her Purported Protected Activity and The Reasoning Behind Chanel's Decision To Terminate Her Employment ................................................................. 21

4.     Allen Fails to Demonstrate That The Articulated Reason For Her Termination Was A Pretext For Retaliation ........................................... 21

D.     ALLEN WAS UNJUSTLY ENRICHED AND MUST RETURN CHANEL'S MONEY ........................................................................................ 22

1.     There Was No Meeting of the Minds Between Allen and Chanel ...................... 23

2.     Allen Received A Benefit At Chanel's Expense .................................... 24

CONCLUSION..................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps;">CASES</span>

*Abreu v. Suffolk Cnty. Police Dep't*,
   2007 WL 608331 (E.D.N.Y. Feb. 23, 2007)........................................................................14

*Alfano v. Costello*,
   294 F.3d 365 (2d Cir. 2002)........................................................................................19

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)........................................................................................9, 10

*Baguer v. Spanish Broad. Sys., Inc.*,
   2010 WL 2813632 (S.D.N.Y. July 12, 2010) ..............................................................15, 19

*Blanco v. Brogan*,
   620 F. Supp. 2d 546 (S.D.N.Y. 2009)........................................................................22

*Bradkin v. Leverton*,
   26 N.Y.2d 192 (1970) ..............................................................................................24

*Brady v. Calyon Sec. (USA)*,
   2007 WL 4440926 (S.D.N.Y. Dec. 17, 2007) ............................................................16

*Brown v. Soc'y for Seaman's Children*,
   194 F. Supp. 2d 182 (E.D.N.Y. 2002) ......................................................................17

*Castro v. N.Y.C. Bd. of Educ.*,
   1998 WL 108004 (S.D.N.Y. Mar. 12, 1998) ..............................................................20

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)........................................................................................9, 10

*Connell v. Consol. Edison Co. of N.Y., Inc.*,
   109 F. Supp. 2d 202 (S.D.N.Y. 2000)........................................................................15

*Cooney v. Consol. Edison*,
   220 F. Supp. 2d 241 (S.D.N.Y. 2002), *aff'd*, 63 F. App'x 579 (2d Cir. 2003)........................19

*Cruz v. Coach Stores, Inc.*,
   202 F.3d 560 (2d Cir. 2000)........................................................................................11

*Curtis v. Airborne Freight Corp.*,
   87 F. Supp. 2d 234 (S.D.N.Y. 2000)........................................................................13

*Danzer v. Norden Sys.*,
   151 F.3d 50 (2d Cir. 1998)........................................................................................16

*De La Cruz v. N.Y. City Human Res. Admin. Dep't of Soc. Servs.*,
   82 F.3d 16 (2d Cir. 1996)............................................................................10

*DiCola v. SwissRe*,
   996 F.2d 30 (2d Cir. 1993)...........................................................................18

*Duviella v. Jetblue Airways*,
   353 F. App'x 476 (2d Cir. 2009) ..................................................................20

*Gorzynski v. JetBlue Airways Corp.*,
   596 F.3d 93 (2d Cir. 2010)...........................................................................12

*Grady v. Affiliated Cent., Inc.*,
   130F.3d 553 (2d Cir. 1997).....................................................................11, 13

*Griffin v. Ambika Corp.*,
   103 F. Supp. 2d 297 (S.D.N.Y. 2000).........................................................11

*Gross v. FBL Fin. Servs.*,
   129 S. Ct. 2343 (2009) ............................................................................12, 18

*Gross v. N.B.C.*,
   232 F. Supp. 2d 58 (S.D.N.Y. 2002)............................................................14

*Harris v. Forklift Sys.*,
   510 U.S. 17 (1993)........................................................................................12

*Hernandez v. N.Y. City Law Dep't Corp. Counsel*,
   1997 WL 27047 (S.D.N.Y Jan. 23, 1997) ...................................................11

*Hill v. Westchester Aeronautical Corp.*,
   112 A.D.2d 977, 492 N.Y.S.2d 789 (2d Dep't 1985) ..................................14

*Hollander v. Am. Cyanamid Co.*,
   895 F.2d 80 (2d Cir. 1990)...........................................................................21

*Holt v. KMI-Cont'l, Inc.*,
   95 F.3d 123 (2d Cir. 1996)...........................................................................22

*Holt v. Roadway Package Sys., Inc.*,
   506 F. Supp. 2d 194 (W.D.N.Y. 2007) ........................................................13

*James v. N.Y. Racing Ass'n*,
   233 F.3d 149 (2d Cir. 2000)..........................................................................11

*Kaye v. Grossman*,
   202 F.3d 611 (2d Cir. 2000).........................................................................24

*Leibowitz v. Cornell Univ.*,
584 F.3d 487 ...............................................................................................18

*Little v. N.Y.*,
1998 U.S. Dist. LEXIS 21797 (E.D.N.Y. June 8, 1998), *aff'd*, 1999 U.S. App. LEXIS
7768 (2d Cir. 1999)......................................................................................19

*Lizardo v. Denny's, Inc.*,
270 F.3d 94 (2d Cir. 2001)..........................................................................18

*Male v. Tops Markets, LLC*,
2011 WL 2471449 (W.D.N.Y. June 22, 2011) ........................................22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .....................................................................................10

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ...............................................................................10, 11

*Meder v. City of N.Y.*,
2007 WL 1231626 (E.D.N.Y. Apr. 27, 2007) ..........................................21

*Meiri v. Dacon*,
759 F.2d 989 (2d Cir. 1985)....................................................................14, 19

*Miller v. Schloss*,
218 N.Y. 400 (1916) .....................................................................................24

*Mosley v. City of Rochester*,
574 F. App'x 41 (2d Cir. 2014) ..................................................................11

*Murray v. Visiting Nurse Servs. of N.Y.*,
528 F. Supp. 2d 257 (S.D.N.Y. 2007)........................................................21

*O'Dell v. Trans. World Entm't Corp.*,
153 F. Supp. 2d 378 (S.D.N.Y. 2001).......................................................20

*Parcinski v. The Outlet Co.*,
673 F.2d 34 (2d Cir. 1982)..........................................................................18

*Pasha v. William M. Mercer Consulting, Inc.*,
2004 U.S. Dist. LEXIS 1226 (S.D.N.Y. Feb. 2, 2004).............................14

*Passonno v. State Univ. of N.Y.*,
889 F. Supp. 602 (N.D.N.Y. 1995) .............................................................13

*Patterson v. Cnty. of Oneida*,
375 F.3d 206 (2d Cir. 2004)....................................................................13, 15

*Penberg v. Healthbridge Mgmt.*,
    823 F. Supp. 2d 166 (E.D.N.Y. 2011) ...................................................................17

*Philitas v. NYC Admin. for Children's Servs.*,
    2011 WL 832227 (S.D.N.Y. Mar. 4, 2011) ...........................................................12

*Pisana v. Merrill Lynch & Co., Inc.*,
    1995 WL 438715 (S.D.N.Y. July 24, 1995) .........................................................15

*Pronin v. Raffi Custom Photo Lab, Inc.*,
    383 F. Supp. 2d 628 (S.D.N.Y. 2005)...................................................................16

*Quarles v. Gen. Motors Corp. (Motors Holding Div.)*,
    758 F.2d 839 (2d Cir. 1985)...................................................................................13

*Quinby v. WestLB AG*,
    2007 WL 3047111 (S.D.N.Y. Oct.18, 2007) .......................................................15

*Revere v. Bloomingdale's, Inc.*,
    2006 WL 3314633 (E.D.N.Y. Nov. 14, 2006).......................................................21

*Saeed Epakchi DMD, P.C. v. Araghi*,
    2012 WL 3217172 (N.Y. Sup. Ct. Suffolk Cnty. Aug. 8, 2012) ...........................23

*Schiano v. Quality Payroll Sys. Inc.*,
    445 F.3d 597 (2d Cir. 2006)...................................................................................12

*Silber v. N.Y. Life Ins. Co.*,
    92 A.D.3d 436 (1st Dep't 2012) ...........................................................................23

*Sitkiewicz v. Initial Servs. U.S.A.*,
    1999 WL 728643 (S.D.N.Y. Sept. 17, 1999).......................................................20

*Slattery v. Swiss Reinsurance Am. Corp.*,
    248 F.3d 87 (2d Cir. 2001).....................................................................................11

*St. Mary's Honor Ctr. v. Hicks*,
    509 U.S. 502 (1993)...............................................................................................11

*Tex. Dep't of Cmty. Affairs v. Burdine*,
    450 U.S. 248 (1981)...............................................................................................11

*Thompson v. Solis*,
    2010 WL 2134563 (2d Cir. May 28, 2010) ..........................................................10

*Western World Ins. Co. v. Stack Oil, Inc.*,
    922 F.2d 118 (2d Cir. 1990)...................................................................................10

**STATUTES**

42 U.S.C. § 1981 ...................................................................................................1, 9, 10, 11

Age Discrimination in Employment Act ............................................................ passim

Civil Rights Act of 1866 ..................................................................................................1

COBRA ..................................................................................................2, 9, 23, 24

Title VII of the Civil Rights Act of 1964 .....................................................1, 9, 13, 14

**OTHER AUTHORITIES**

Civil Rule 56.1 ................................................................................................... passim

Fed. R. Civ. P. 56 ..........................................................................................................25

Fed. R. Civ. P. 56(c) .......................................................................................................9

Fed. R. Civ. P. 56(e) .....................................................................................................10

## PRELIMINARY STATEMENT

Defendant Chanel, Inc. ("Chanel") respectfully submits this memorandum of law in support of its motion for summary judgment, seeking the dismissal of plaintiff Anu Allen's ("Allen's") claims of discrimination and retaliation and granting Chanel's counterclaim for unjust enrichment.

Allen cannot produce admissible evidence sufficient to support her discrimination claims. In her Complaint, Allen, claims that her employment was terminated because of her age, race and sex and in retaliation for her alleged protected activity, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("§ 1981"), the Age Discrimination in Employment Act ("ADEA") and the New York State Human Rights Law ("NYSHRL"). The undisputed facts show that summary judgment in favor of Chanel is warranted.

Allen's employment was terminated because the Samples Coordinator position which she held was eliminated as part of a corporate restructuring based on Chanel's business needs at the time. In support of her claim of discrimination, Allen offers speculative and conclusory allegations in an effort to undermine Chanel's legitimate, non-discriminatory reason for her termination. In doing so, however, Allen utterly fails to establish that she was terminated under circumstances giving rise to an inference of discrimination. Because Allen has no competent evidence from which a jury could find that Chanel eliminated the Samples Coordinator position and terminated Allen's employment because of her race, age and/or sex, and because this Court should not second-guess the discretion afforded to corporations in reaching business decisions, summary judgment in favor of Chanel is warranted.

Allen's retaliation claim fares no better. Allen's general complaints of unfairness do not constitute protected activity under the law. Even assuming, *arguendo*, that her complaints

constituted protected activity, which they do not, Allen cannot deny that the decision to eliminate the Samples Coordinator position was well underway by the time Allen raised her concerns and one of the decision-makers had absolutely no knowledge of her complaints at the time the decision was made to eliminate the Samples Coordinator position. Thus, there is no causal connection between Allen's purported protected activity and her termination.

Finally, Allen unilaterally modified the separation and release agreement presented to her at the time of her termination and returned it to Chanel with substantive changes of which Chanel was not made aware and to which it never agreed. Thus, there was no meeting of the minds and no contract exists between Allen and Chanel regarding her separation of employment. As a result, Allen was unjustly enriched by receiving a separation payment and five months of COBRA coverage at Chanel's expense.

For these reasons, and those demonstrated below, the Court should grant Chanel's motion for summary judgment dismissing Allen's claims and finding in Chanel's favor with respect to its counterclaim for unjust enrichment.

## STATEMENT OF UNDISPUTED FACTS

The undisputed material facts are set forth in Chanel's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Def.'s 56.1"). For the Court's convenience, Chanel incorporates herein those undisputed facts and provides the following summary.

### A. THE PARTIES

Allen was born on February 24, 1969 and is a female of Asian/Indian descent. (Def.'s 56.1, ¶ 1). Chanel is a New York corporation and manufacturer and/or distributor of luxury goods, including fashion products. (*Id*., ¶ 2). Chanel maintains an Equal Employment Opportunity Policy providing for "equal employment opportunity to qualified individuals regardless of…*race, color, sex, age*…or any other protected characteristic as established by

law." (emphasis added). (*Id.*, ¶ 3). In addition, Chanel maintains a Non-Discrimination and Anti-Harassment Policy which ensures that employees work in a professional environment free from all forms of discrimination and/or harassment. (*Id.*).

**B.      ALLEN'S IS HIRED AND PROMOTED CHANEL**

In May of 1993, Allen began working at Chanel as a full-time executive receptionist at Chanel's headquarters in New York, New York. (*Id.*, ¶ 5). Allen was paid on an hourly basis and handled traditional receptionist duties. (*Id.*, ¶ 6). Allen held this position for approximately seven years when she was promoted to the position of Office Services Coordinator effective January 2001. (*Id.*, ¶¶ 7, 8). Allen was pleased with this promotion as she no longer found the receptionist role fulfilling and her new position was paid on a salary basis and came with an increase in compensation. (*Id.*, ¶¶ 8, 9). As the Office Services Coordinator, Allen reported to the Office Manager and assisted with taking care of the facilities. (*Id.*, ¶ 10). This was a new position specifically created for Allen. (*Id.*, ¶ 11). Allen was displeased that her desk was located in the mailroom and raised her concerns to Chanel. (*Id.*). After her complaint, Allen was moved to another location on the floor. (*Id.*).

**C.      ALLEN APPLIES FOR AND IS SELECTED AS SAMPLES COORDINATOR IN CHANEL'S FASHION WHOLESALE DIVISION**

After working as the Office Services Coordinator for approximately six years, Allen saw that a Samples Coordinator position was available in Fashion Wholesale. (*Id.*, ¶ 12). Allen was interested in working in the Fashion Division and applied for a transfer. (*Id.*). Allen went through a formal interview process for the Samples Coordinator position. (*Id.*, ¶ 13). There was at least one other candidate for the position - a Caucasian who was younger than Allen. (*Id.*). Ultimately, Allen was selected as the Samples Coordinator for Chanel's Fashion Wholesale Division and was transferred to the position in 2007. (*Id.*, ¶ 14).

As the Samples Coordinator, Allen first reported to Jason Jobson, the then Manager of Events & Training. (*Id.*, ¶ 15). Thereafter, Jobson left the position and Allen reported to the new Manager of Events & Training, Cat Porter ("Porter"). (*Id.*). After reporting to Porter for approximately two years, Porter was promoted to a different role. (*Id.*). With Porter holding a different position, in or around August 2011 Allen began reporting directly to Susanna Klein ("Klein"), Executive Director Ready to Wear & Wholesale Events & Training. (*Id.*, ¶ 16). Klein, in turn, reported to Stephanie Zernik ("Zernik"), Senior Vice President of Fashion Wholesale who reported to Barbara Cirkva ("Cirkva"), President of Fashion, Watches and Fine Jewelry. (*Id.*).

**D.   DEMOGRAPHICS OF FASHION WHOLESALE**

As of January 2012, there were thirty-two employees working in Fashion Wholesale, including Allen, Klein and Zernik. (*Id.*, ¶ 17). Of those thirty-two employees, thirty-one were female, including Allen, Klein and Zernik; seven were over the age of forty, including Allen and Zernik; and eight were of Asian ethnicity. (*Id.*, ¶¶ 18-20). Cirkva was also a female over the age of forty (*Id.*, ¶ 19).

**E.   ALLEN'S RELATIONSHIP WITH KLEIN IN THE WORKPLACE**

Allen and Klein had a friendly relationship at work, during which they shared personal things about their lives and would frequently joke around with one another. (*Id.*, ¶ 21). For example, Allen referred to Klein's skin tone in an email and joked to Klein that she needed to wear her sunscreen to protect her "porcelain" skin. (*Id.*). Allen now claims that she was only friendly towards Klein because she was "playing the game." (*Id.*, ¶ 23).

Instead, Allen contends that Klein was "extremely difficult" to work with, that "everyone was afraid of her," and that Klein was "unfair, not liked, aggressive, abrasive, rude, disrespectful and out of line." (*Id.*, ¶¶ 23, 24). As Allen repeatedly emphasized at her deposition, everyone

who worked with Klein purportedly felt the same way. (*Id.*, ¶ 25). Indeed, Allen concluded that Klein mistreated many people she worked with - "different people at different times" - solely because of her position of authority. (*Id.*, ¶ 26).

## F.   FASHION WHOLESALE IS RESTRUCTURED UNDER ZERNIK

Zernik joined Chanel in April of 2011 as the Senior Vice President of Fashion Wholesale. (*Id.*, ¶ 27). She immediately reviewed the structure of the Division to determine the appropriate restructuring necessary to match the needs of Chanel's business at the time. (*Id.*). Discussions regarding the restructuring of the Ready to Wear & Events department began immediately upon Zernik's arrival and were ongoing for some time. (*Id.*, ¶ 28). The first restructuring that occurred under Zernik's leadership was the transfer of Training from under Klein's leadership and out of Fashion Wholesale. (*Id.*, ¶ 29). This occurred in the summer of 2011. (*Id.*).

After Training was removed from the Ready to Wear department, in or around August of 2011 it became clear that Chanel no longer required a position that was one hundred percent dedicated to managing samples - *i.e.*, the Samples Coordinator position. (*Id.*, ¶ 33). In addition to the removal of Training, which had involved the use of sample products, there was a significant cut back on the sample budgets. (*Id.*, ¶ 30). Also, while the previous focus had been on point of sale trunk shows, Chanel determined that the focus was not "brand right" and a strategic decision was made to greatly reduce the number of trunk shows. (*Id.*, ¶ 31). The new focus would be on events rather than trunk shows. (*Id.*). These changes only further confirmed that a Samples Coordinator position was no longer necessary, a concept that had been discussed beginning in the fall of 2011. (*Id.*, ¶ 32).

## G.   THE SAMPLES COORDINATOR POSITION IS ELIMINATED

The decision to eliminate the Samples Coordinator position and to terminate Allen's employment was made by Zernik, with final approval from Cirkva and Human Resources. (*Id.*,

¶ 38).  As Klein had previously exhibited difficulty in managing Allen and had a personal

relationship with Allen in the workplace, she was not involved in ultimately making the decision

to eliminate Allen's position and terminate her employment.  (*Id*., ¶ 39).

In eliminating the Samples Coordinator position, Chanel believed that the department

could focus its headcount on someone with the ability to take on more heightened responsibilities

aligned with the new strategic approach.  (*Id*., ¶ 34).  As part of the restructuring discussions,

Human Resources worked with Zernik and Klein to discuss various possibilities for restructuring

positions to better suit the business objectives.  (*Id*., ¶ 35).  While various restructuring options

were discussed, ultimately the Samples Coordinator position was eliminated entirely and no new

positions were created at the time.  (*Id*., ¶¶ 35, 37, 52).  The responsibilities previously handled

by Allen as the Samples Coordinator were absorbed by the account representatives and Events

team in Fashion Wholesale.  (*Id*., 53).

## H.    ALLEN'S EMPLOYMENT IS TERMINATED

Allen's employment with Chanel was terminated on February 28, 2012.  (*Id*., ¶ 48).

Zernik and Robin Gruber ("Gruber"), an in-house attorney for Chanel, were present at the

termination meeting.  (*Id*., ¶ 50).  Gruber was present because there were concerns that Allen had

been involved in the selling of Chanel sample goods and Gruber questioned Allen about this at

the termination meeting.  (*Id*.).  Allen was advised that her employment was being terminated

because Chanel was continuing to restructure the department and the Samples Coordinator

position was no longer required.  (*Id*., ¶ 51).

## I.    ALLEN'S GENERAL COMPLAINTS TO ZERNIK AND
##       HUMAN RESOURCE

At all relevant times, Megan Glickman ("Glickman") was the Director of Human

Resources for Fashion, Watches and Fine Jewelry.  (*Id*., ¶ 40).  Glickman began interacting with

Allen, in her HR capacity, when Allen became the Samples Coordinator in 2007.  (*Id*., ¶ 41).

Allen spoke with Glickman about her working relationship with Klein on various occasions,

beginning as early as 2009.  (*Id*., ¶ 42).  More recently, Allen spoke with Glickman on several

occasions from December 2011 through February 2012.  (*Id*.).

During the week of January 30, 2012, Glickman and Allen spoke about Allen's working

relationship with Klein. (*Id*., ¶ 43).  Specifically, Allen explained to Glickman that she was

uncomfortable working with Klein and that she felt Klein treated her poorly.  (*Id*.).  Allen never

complained to Glickman that she was being discriminated against on any basis.  (*Id*.).  While

Allen did not raise claims of discrimination, Glickman still looked into the situation by having

discussions with Zernik about Allen's concerns regarding Klein, how to ensure that the team

remain productive and confirming with Zernik that Zernik was available to the various team

members to speak with her directly about future concerns, if any.  (*Id*., ¶¶ 44-45).

As with Glickman, Allen complained to Zernik about working with Klein because she

felt Klein was moody and difficult to work for.  (*Id*., ¶ 46).  Allen never complained that Klein

was discriminating against her and never mentioned her race, age and/or sex.  (*Id*.).  Allen also

never made any complaints to Cirkva and Cirkva was not aware that she had raised concerns to

Zernik and/or Human Resources.  (*Id*., 47).

## J.  ALLEN UNILATERALLY MODIFIES THE SEPARATION AGREEMENT PRESENTED TO HER WITHOUT CHANEL'S KNOWLEDGE OR AGREEMENT

At the conclusion of the termination meeting with Allen, she was provided a separation

package entitled "Separation and Release Agreement" which set forth terms regarding her

separation from Chanel (the "Release Agreement").  (*Id*., ¶ 54).  She was told to review it, speak

with an attorney and get back to Chanel.  (*Id*.).  The Release Agreement provided to Allen by

Chanel was already signed by Glickman and given to her in hard-copy, non-modifiable format. (*Id.*, ¶ 55). Allen never received an electronic copy of the Release Agreement. (*Id.*)

Chanel recognizes that employees may not agree to all terms of a separation package as presented and/or may seek to add additional terms. (*Id.*, ¶ 59). In those instances, the employee or their representative could negotiate the terms with in-house counsel for Chanel. (*Id.*). Indeed, the Release Agreement specifies that "[t]his Agreement…may be modified only by a writing signed by both parties." (*Id.*). To this end, had Allen sought to make changes to the Release Agreement, Chanel would expect that she or a representative on her behalf would contact Chanel, as all previous employees had done under similar circumstances. (*Id.*, ¶ 60).

Allen spoke with her attorney, Christopher Thompson, about the Release Agreement and discussed her disagreement with certain components - in particular the waiver of her right to sue for discrimination. (*Id.*, ¶ 61). Mr. Thompson provided Allen with advice as to how to proceed and his offices made changes to the Release Agreement, which appeared re-typed in the same font. (*Id.*, ¶¶ 55, 62, 63). Specifically, the general release provision contained in the Release Agreement was changed so that the word "including" became "excluding." (*Id.*, ¶ 63).

Allen communicated with Glickman concerning unemployment benefits and the arrival of her separation check, but never about the changes contained in the Altered Release Agreement. (*Id.*, ¶ 66). In fact, Allen never spoke with anyone at Chanel about the changes she made and never received another copy of the Agreement from Chanel. (*Id.*, ¶ 67). Ultimately, Allen has no knowledge as to whether anyone at Chanel became aware of the modifications in the Altered Release Agreement. (*Id.*). Glickman received the documentation as modified by Allen and reviewed it only to confirm that it had been signed and dated and to review the payment terms. (*Id.*, ¶ 65). Glickman had no reason to review every word because she had done so before it was presented to Allen for her signature, and she received no notice that an entire

page had been retyped and replaced. (*Id.*, ¶¶ 65-67). After receiving the Altered Release Agreement and confirming that it was signed and dated, Glickman authorized the separation payment and Allen received and cashed a check in the amount of $14,940.19 and five months of COBRA premiums paid for by Chanel. (*Id.*, ¶ 69). Had Chanel been aware that the Agreement had been changed, it never would have authorized the separation payment, as it would have recognized that it was getting no consideration for its payments. (*Id*).

## K.     THIS LAWSUIT

After having unilaterally modified the general release provisions in the separation Agreement presented to her, Allen filed her Complaint with this Court on May 10, 2012. (*Id.*, ¶ 78). In her Complaint, Allen alleges that she was discriminatorily discharged on the basis of her age, race and sex and retaliated against in violation of Title VII, the ADEA, § 1981 and the NYSHRL. In response to Allen's actions, Chanel asserted various counterclaims, including unjust enrichment. (ECF No. 23). As demonstrated below, this case is ripe for summary judgment dismissing Allen's claims and finding that Allen was unjustly enriched.

## ARGUMENT

## A.     THE APPLICABLE SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment where, as here, the pleadings, depositions, affidavits, and other discovery establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Summary judgment provides a procedure whereby determinations can be made without recourse to a costly, lengthy, and unnecessary trial:

> [s]ummary judgment procedure is properly regarded not as a
> disfavored procedural shortcut, but rather as an integral part of the
> Federal Rules as a whole, which are designed 'to secure the just,
> speedy and inexpensive determination of every action.'

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (*quoting* Fed. R. Civ. P. 1).

To carry its initial burden, the moving party must show that "there is an absence of evidence to support the nonmoving party's case." *See id.* at 325. A moving party need only show the absence of proof of any of the essential elements of the non-movant's case. *Id.* at 323. Once a properly supported motion for summary judgment has been made, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Liberty Lobby*, *Inc.*, 477 U.S. at 248. Thus, to withstand this motion as to Allen's claims of discrimination and retaliation, she must do more than present evidence that is merely colorable, conclusory or speculative; she must present "concrete evidence from which a reasonable [fact-finder] could return a verdict in [her] favor." *Liberty Lobby, Inc.*, 477 U.S. at 256; *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (nonmoving party "cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' or defeat the motion through 'mere speculation or conjecture.'") (internal citations omitted). In sum, Allen "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Applying this standard to the undisputed material facts in this case, it is clear that Chanel is entitled to summary judgment on each of Allen's meritless claim. Likewise, the undisputed facts make clear that Chanel is entitled to judgment as a matter of law in connection with its counterclaim for unjust enrichment.

**B.**     <u>**ALLEN'S DISCRIMINATION CLAIMS SHOULD BE DISMISSED**</u>

Allen's claims of wrongful termination on the basis of her age, race and sex under Title VII, § 1981, the ADEA and the NYSHRL are assessed under the three-step burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Thompson v. Solis*, 2010 WL 2134563, at *1 (2d Cir. May 28, 2010) (summary order); *De La Cruz v. N.Y.*

*City Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996).[1]  Under this

analysis, Allen bears the initial burden of establishing a *prima facie* case of discrimination.  *St.

Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 503-08 (1993).

To establish a *prima facie* case of age, race and sex discrimination, Allen must show that

she was terminated under circumstances giving rise to an inference of discrimination.  *Grady v.

Affiliated Cent., Inc.,*130 F.3d 553, 559 (2d Cir. 1997).   If she successfully makes out a *prima

facie* case, Chanel easily rebuts her showing by articulating a legitimate non-discriminatory

reason for her termination.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981).

Allen then bears the ultimate burden of showing that Chanel's reason for terminating her

employment was false *and* that the real reason for that decision was discrimination due to her

age, race and sex.  *Slattery*, 248 F.3d at 91 (plaintiff bears the "final burden" of "prov[ing] not

only that the proffered nondiscriminatory reason was pretextual *but also* that [the employer]

discriminated against [her]") (emphasis added); *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 156-

57 (2d Cir. 2000).

"In the summary judgment context, the 'central question' is whether [Allen has]

'presented sufficient admissible evidence from which a rational finder of fact could infer that

more likely than not [she was] the victim of [discrimination],' *i.e.*, that an impermissible reason

played a *determinative* role in the adverse decision."  *Griffin v. Ambika Corp.*, 103 F. Supp. 2d

297, 307 (S.D.N.Y. 2000) (citing *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 447 (2d Cir. 1999)

(emphasis added)).  With respect to her age discrimination claims under the ADEA and

---

[1] In analyzing discrimination and retaliation claims under the ADEA, § 1981, and  NYSHRL, the Second Circuit follows the evidentiary framework set out in *McDonnell Douglas.  See, e.g., Mosley v. City of Rochester*, 574 F. App'x 41, 42 (2d Cir. 2014) (noting that Title VII, § 1981 and NYSHRL claims analyzed under burden-shifting framework set forth in *McDonnell Douglas*); *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001) (ADEA retaliation claim); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n.1 (2d Cir. 2000) (NYSHRL claim). § 1981 is only applicable to claims of race discrimination.  *See Hernandez v. N.Y. City Law Dep't Corp. Counsel*, 1997 WL 27047, at *18 (S.D.N.Y Jan. 23, 1997).

NYSHRL, however, Allen must do even more: she must show that her age was the "but for" cause of Chanel's decision. *Gross v. FBL Fin. Servs.*, 129 S. Ct. 2343, 2350 (2009); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 n.6 (2d Cir. 2010) ("[W]e assume…that the Supreme Court's *Gross* decision affects the scope of the NYSHRL law as well as the ADEA.").[2]

As demonstrated below, Allen cannot establish a *prima facie* case of wrongful termination on the basis of her age, race or sex because she was not terminated under circumstances giving rise to an inference of discrimination. Even if she could do so, she has absolutely no evidence that Chanel's reason for terminating her employment – the elimination of her position – was false *and* that the real reason for that decision was discrimination.

**1.     Allen Cannot Prove a Prima Facie Case of Discriminatory Discharge[3]**

Allen cannot establish a *prima facie* case of discrimination. There is absolutely no evidence that Chanel's decision to eliminate the Samples Coordinator position and terminate Allen's employment was in any way related to her age, race or sex. (Def.'s 56.1., ¶¶ 28-39, 48-53, 71-74).

---

[2] Even if *Gross'* "but for" causation standard does not apply to Allen's NYSHRL age discrimination claims, summary judgment would still be warranted on those claims because her age was not a motivating factor in the decisions. As demonstrated below, the record is completely devoid of any evidence of age discrimination.

[3] The Complaint is filled with vague references to harassment based on age, race and sex. While it is unclear whether Allen intended to assert a claim for a hostile work environment - which she does not explicitly do - such a claim would nonetheless fail because Allen must establish that Chanel's work environment was "permeated with discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of [her] employment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (internal citations and quotations omitted). Whether alleged harassment is sufficiently severe or pervasive to alter the terms of conditions of employment involves both objective and subjective components. *Id.* at 21. In other words, it is not enough that Allen may have subjectively perceived the work environment to be abusive; the environment must also be one that a "reasonable person" would find hostile or abusive. *See Philitas v. NYC Admin. for Children's Servs.*, 2011 WL 832227, at *6 (S.D.N.Y. Mar. 4, 2011) (granting summary judgment as to plaintiff's hostile work environment claim). The Supreme Court has identified a non-exhaustive list of factors that courts should weigh in assessing whether a hostile work environment exists, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Schiano v. Quality Payroll Sys. Inc.*, 445 F.3d 597, 605 (2d Cir. 2006) (internal quotations and citations omitted). As discussed throughout, Allen cannot show that any purported harassment was sufficiently severe or pervasive to establish a hostile work environment. Finally, while Allen does not assert a claim in connection with her alleged sexual harassment in or around 1998, any such claim is clearly time-barred by the applicable statutes of limitation.

To establish a prima facie case of discriminatory discharge, Allen must show that she was terminated "under circumstances giving rise to an inference of discrimination." *Grady*, 130 F.3d at 559. To do so, Allen must "produce direct or circumstantial evidence that would lead a 'reasonable fact-finder to conclude either . . . that [Chanel terminated her employment] because of her [age and/or race and/or sex], or [that Chanel considered her age and/or race and/or sex] as a negative factor in such consideration." *Passonno v. State Univ. of N.Y.*, 889 F. Supp. 602, 607 (N.D.N.Y. 1995) (citations omitted); *see also Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004).

The thrust of Allen's allegations surround her contentions that she was a "constant outsider" (despite being employed by Chanel for nineteen years) and that she did not fit in because she did not come from a background with money. (Def.'s 56.1, ¶ 71). According to Allen, Klein treated her differently because of this. (*Id.*). Ultimately, Allen claims that Klein mistreated her and was unfair not only towards her, but towards all of the employees with whom she worked. (*Id.*, ¶¶ 26, 27). This alone undermines her claims of discrimination. *See, e.g., Holt v. Roadway Package Sys., Inc.*, 506 F. Supp. 2d 194, 203-04 (W.D.N.Y. 2007) (granting summary judgment and finding that a supervisor's use of generalized curse words to all employees, not only plaintiff, undercut plaintiff's claim of discrimination); *Curtis v. Airborne Freight Corp.,* 87 F. Supp. 2d 234, 250 (S.D.N.Y. 2000) ("Title VII only protects employees from improper discriminatory intimidation; it does not reach so far as to protect plaintiffs from undiscriminating intimidation by bullish and abusive supervisors.").

Allen was unable to articulate a reason for the alleged mistreatment on behalf of Klein beyond her mere "belief" that it was related to her race and/or age.[4] (Def.'s 56.1, ¶¶ 72-74). Such speculation is wholly insufficient to withstand summary judgment. *Quarles v. Gen. Motors*

---

[4] During her deposition, Allen did not claim that she was discriminated against on the basis of her sex.

*Corp. (Motors Holding Div.)*, 758 F.2d 839, 840 (2d Cir. 1985) (plaintiff may not depend on "mere conjecture or speculation" to overcome a motion for summary judgment); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) (conclusory allegations of discrimination are not enough to evade summary judgment); *Abreu v. Suffolk Cnty. Police Dep't*, 2007 WL 608331, at *9 (E.D.N.Y. Feb. 23, 2007) (mere speculation "is insufficient to overcome defendants' summary judgment motion as to the discrimination claims").

      For each of the reasons set forth below, the elimination of the Samples Coordinator position and Allen's termination did not occur under circumstances giving rise to an inference of discrimination.

      a)     *Other Employees of Same Protected Classes Not Adversely Affected Negates Any Inference of Discrimination*

      The demographics of Fashion Wholesale further belie any claim of discrimination. Of the thirty-two employees at the time of Plaintiff's termination, all but one were female. (Def.'s 56.1, ¶ 18). Not including Plaintiff, there were seven employees who self-identified as Asian. (*Id.*, ¶ 20) Likewise, there were six employees other than Allen over the age of forty. (*Id.*, ¶ 19). These individuals were not terminated or otherwise subject to adverse employment actions. These facts alone undermine Allen's allegations of race, age and sex discrimination. *Gross v. N.B.C.*, 232 F. Supp. 2d 58, 73 (S.D.N.Y. 2002) (fact that other women were not adversely affected negates inference of discrimination); *Pasha v. William M. Mercer Consulting, Inc.*, 2004 U.S. Dist. LEXIS 1226, at *20–21 (S.D.N.Y. Feb. 2, 2004) (granting summary judgment and relying on "undisputed [evidence] that members of the protected class were hired," because "in determining whether discrimination was a motivating factor for an adverse employment decision, evidence of an employer's non-discrimination should be considered as well."); *Hill v. Westchester Aeronautical Corp.*, 112 A.D.2d 977, 978, 492 N.Y.S.2d 789, 791 (2d Dep't 1985)

(employee's assertions were insufficient to establish age discrimination, in light of evidence indicating that six of 22 of employer's other employees were employee's age or older).

        b)        *Allen's Age and Sex Discrimination Claims Are Significantly Undermined By The Fact That She is Younger Than and the Same Sex As The Decision-makers*

The fact that Zernik and Cirkva, the decision-makers behind the elimination of the Samples Coordinator position, are females who are older than Allen  (Def.'s 56.1, ¶ 38), wholly "undermines any inference of [age or sex] discrimination.  *Baguer v. Spanish Broad. Sys., Inc.*, 2010 WL 2813632, at *15 (S.D.N.Y. July 12, 2010) (granting summary judgment to defendants relying upon the fact that decision makers were older than plaintiff and stating that this fact "undermines any inference of discrimination"); *Connell v. Consol. Edison Co. of N.Y., Inc.*, 109 F. Supp. 2d 202, 209 (S.D.N.Y. 2000) (inference *against* discriminatory intent where decision maker is in the same protected class as plaintiff); *Pisana v. Merrill Lynch & Co., Inc.*, 1995 WL 438715, at *5 (S.D.N.Y. July 24, 1995) (granting summary judgment and finding that "[t]he fact that the[ ] decision makers were close to [plaintiff's] age, or older, weakens any suggestion of age discrimination").

        c)        *Klein Was Not A Decision-maker*

Allen's contention that Klein treated her differently based on her age, race and/or sex have no bearing on her claim for discriminatory discharge because Klein was not involved in deciding that the Samples Coordinator position be eliminated.  *See, e.g., Patterson*, 375 F.3d at 223 (plaintiff failed to make out prima facie case when evidence only related to discrimination by co-workers, not actual decisionmakers); *Quinby v. WestLB AG*, 2007 WL 3047111, at *1 (S.D.N.Y. Oct.18, 2007) ("Generally speaking, comments by non-decision makers cannot be used to establish discriminatory animus.").

d)      *Alleged Comments Are Stray Remarks*

Allen contends that she was subject to or became aware of the following discriminatory comments:  (1) Klein allegedly told Plaintiff that "since she was not white, not married and getting old that she would be just another single-mother like all of the other minorities"; and (2) Zernick commented to Klein that the company "had too many Asian and minority workers and not enough Jewish girls like them."  (Compl., ¶¶ 17, 18).  Accepting that these comments were made for purposes of summary judgment only does not negate the fact that they are more accurately categorized as vague stray remarks.  These isolated and relatively innocuous and benign comments are simply insufficient to support a discrimination claim.  *See, e.g., Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 1998) ("stray comments" without "other indicia of discrimination" are insufficient to establish a *prima facie* case); *Brady v. Calyon Sec. (USA)*, 2007 WL 4440926, at *14 (S.D.N.Y. Dec. 17, 2007) (holding comments including "the old man with all the wisdom," "the old man that is so knowledgeable in research" and "[t]ake a lesson, old man" to be insufficient to support a claim of discrimination); *Pronin v. Raffi Custom Photo Lab, Inc.*, 383 F. Supp. 2d 628, 638 (S.D.N.Y. 2005) (holding "maybe you are too old to be working here" insufficient).

e)      *Former Chanel Employees Identified In The Complaint Are Not Similarly Situated and Allen Has No Personal Knowledge Concerning Their Employment With or Departures From Chanel*

In conclusory fashion, Allen alleges that Chanel "has routinely practiced age, race and sex discrimination against its employees including…former employees, Aimee Trralba, Timothy Doran, Richard Bleaman and Dominic McNally."  (Compl., ¶ 15).  As an initial matter, Allen only further belies her claim of discrimination by pointing to Caucasian men as examples of other former employees who were allegedly discriminated against in a similar manner.  Next, Trallba, Doran, Bleaman and McNally are not similarly situated to Allen in that they never

worked in Fashion Wholesale and never worked with or reported to Klein or Zernik. (Def.'s 56.1, ¶ 75). Moreover, Allen has no personal knowledge regarding the circumstances surrounding these individuals' employment with and/or departure from Chanel, and is instead relying on speculation and/or inadmissible hearsay. (*Id.*, ¶ 76). In other words, Allen's conclusory allegation - not based in fact - does not support her claim of discrimination. *See, e.g., Brown v. Soc'y for Seaman's Children*, 194 F. Supp. 2d 182, 193 (E.D.N.Y. 2002). (Plaintiff's "assertions are based on rumor and hearsay and may not be considered in opposition to defendants' well documented motion for summary judgment.")

For all of these reasons, Allen has no evidence that she was terminated under circumstances giving rise to an inference of discrimination and the Court should dismiss Allen's conclusory speculation.

2.      **The Elimination of the Samples Coordinator Position Was A Legitimate, Non-Discriminatory Business Reason For Her Termination**

Even if Allen could establish a *prima facie* case of discrimination - which she cannot do - Chanel had a legitimate, non-discriminatory reason for her termination: Allen's position was being eliminated in light of corporate restructuring based on the then current needs of the business. (Def.'s 56.1, ¶¶ 28-38). Indeed, Allen acknowledged the position elimination at her deposition when, in response to questions concerning what she told potential employers in a job interview, Allen responded: "The truth. I told them that my job was -- that the position was eliminated." (*Id.*, ¶ 51).

Courts have repeatedly held that, in instances of company restructuring and reorganizing, a company's need to eliminate positions based on the needs of the business are legitimate and non-discriminatory business decisions. *See, e.g., Penberg v. Healthbridge Mgmt.*, 823 F. Supp. 2d 166, 176 (E.D.N.Y. 2011) ("economically-driven restructuring" is legitimate, non-

discriminatory reason for termination); *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 504 (accepting budgetary constraints as legitimate business reason for terminating employee); *Parcinski v. The Outlet Co.*, 673 F.2d 34, 36–37 (2d Cir. 1982) (reversing judgment for Plaintiff, entering judgment for Defendant and finding "[t]he [ADEA] does not forbid essential corporate belt-tightening having no discriminatory motivation…the [ADEA] does not authorize the courts to judge the wisdom of a corporation's business decisions."); *DiCola v. SwissRe*, 996 F.2d 30, 32 (2d Cir. 1993) (affirming summary judgment and finding no ADEA violation where "the substantial diminution of [Plaintiff's] responsibilities not only eliminated the need for his position but also rendered his high salary economically unjustified.")

In a last ditch effort, Allen appears to claim that the position was not in fact eliminated. (Compl., ¶ 14). The undisputed evidence is clear, however, that the Samples Coordinator position was eliminated and never filled. (*Id.*, ¶ 52).

**3.      Allen Has No Evidence That Chanel's Reason For Terminating Her Employment Were False And That The Real Reason Was Discrimination**

As demonstrated above, there is no evidence even remotely suggesting that the reason for Allen's termination was false, let alone that her age, race and/or sex was the real reason for her termination. *See supra*, pgs. 12-18. Moreover, Allen has no evidence that her age was a motivating factor in Chanel's decision to fire her, let alone the "but for" cause of that decision. *See Gross*, 129 S. Ct. at 2350. Therefore, summary judgment in favor of Chanel is warranted.

Foreclosed from establishing pretext, Allen is reduced, once again, to relying on her own speculative and conclusory opinion that her age, race and/or sex led to her termination. But such conjecture is insufficient to establish pretext, create an issue of fact, or survive summary judgment. *See*, *e.g.*, *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001) ("Plaintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have

been related to their race.  That is not sufficient."); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.

1985) ("[C]onclusory allegations of discrimination are insufficient to satisfy the requirements of

Rule 56(e)."), *cert. denied*, 474 U.S. 829 (1985); *Little v. N.Y.*, 1998 U.S. Dist. LEXIS 21797, at

*16 (E.D.N.Y. June 8, 1998) ("It is well settled that a plaintiff's speculations, generalities, and

gut feelings, however genuine, when they are not supported by specific facts, do not allow for an

inference of discrimination to be drawn."), *aff'd*, 1999 U.S. App. LEXIS 7768 (2d Cir. 1999).

In the end, Allen's disagreement with Chanel's decision to eliminate the Samples

Coordinator position, or her belief that the termination decision was unfair, does not as a matter

of law prove pretext.  Allen does not have any evidence to cast doubt on Chanel's legitimate,

non-discriminatory reason for her termination and the law is clear that courts should not second-

guess valid termination decisions.  *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) ("The

court's role is to prevent unlawful [employment] practices, not to act as a superpersonnel

department that second guesses employers' business judgments.").  Indeed, "federal courts are

not in the business of adjudging whether employment decisions are prudent or fair.  Instead, [the

Court's] sole concern is whether unlawful discriminatory animus motivates . . . a decision."  *Id.*;

*Baguer*, 2010 WL 2813632, at *6 ("'a fact-finder need not, and indeed should not, evaluate

whether a defendant's stated purpose is unwise or unreasonable'" (internal citations omitted)).

## C.     ALLEN CANNOT ESTABLISH A PRIMA FACIE CASE OF RETALIATION

To establish a *prima facie* case of retaliation, Allen must show that (1) she engaged in

protected activity; (2) Chanel knew about this activity; (3) Chanel took adverse action against

her; and (4) a causal connection exists between her protected activity and the adverse action –

*i.e.*, that a retaliatory motive played a part in the termination decision. *Cooney v. Consol. Edison*,

220 F. Supp. 2d 241, 248 (S.D.N.Y. 2002), *aff'd*, 63 F. App'x 579 (2d Cir. 2003). Allen cannot establish the first, second or fourth elements of her *prima facie* case.

## 1. Allen Did Not Engage In Protected Activity

Allen alleges that she complained to Zernik and Human Resources in December of 2011 and that she was terminated for reporting unlawful discrimination. (Compl., ¶¶ 21, 25). Yet when asked what concerns she specifically raised to Human Resources, Allen was unable to recall. (Def.'s 56.1, ¶ 42). Moreover, Allen wholly ignores that *not one* of her complaints mentioned her age, race, sex or any other type of discrimination. (*Id.*, ¶¶ 43, 46) Rather, she raised general concerns regarding working with Klein and her alleged moodiness and unfair treatment. (*Id.*) Consequently, Allen failed to engage in a "protected activity" as a matter of law. *See O'Dell v. Trans. World Entm't Corp.,* 153 F. Supp. 2d 378, 389 (S.D.N.Y. 2001) ("[b]efore an employer can reasonably respond to sexual harassment, it must have adequate notice of the harassment"); *Sitkiewicz v. Initial Servs. U.S.A.*, 1999 WL 728643, at *8 (S.D.N.Y. Sept. 17, 1999) (employee's grievances alleging that supervisor "harassed" him did not constitute protected activity because none of the grievances included charges of discrimination); *Castro v. N.Y.C. Bd. of Educ.*, 1998 WL 108004, at *8 (S.D.N.Y. Mar. 12, 1998) (lodging grievances without reference to discrimination was not protected activity).

## 2. Cirkva Had No Knowledge of Allen's Complaints to Zernik and Human Resources

Allen cannot prove the second element of her retaliation claim because Cirkva, who participated in the decision to terminate Allen's employment, had no knowledge of her complaints to Zernik and Human Resources. (Def.'s 56.1, ¶ 47). As a result, Allen's complaints could not have been a factor in Cirkva's decision to terminate her employment. *See Duviella v. Jetblue Airways*, 353 F. App'x 476, 477 (2d Cir. 2009) (summary order affirming summary judgment to employer on discriminatory termination claim where individual who investigated

harassment complaint against plaintiff did not know of any protected activity, and where termination decision was based solely on that investigation); *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 271-72 (S.D.N.Y. 2007) (granting employer summary judgment where evidence demonstrated that decision-makers were unaware of plaintiff's complaint at the time they decided to terminate him); *Revere v. Bloomingdale's, Inc.*, 2006 WL 3314633, at *9 (E.D.N.Y. Nov. 14, 2006) (granting summary judgment on retaliation claim where employee's firing pre-dated decision-maker's knowledge of complaint and further noting that the requisite awareness cannot be shown by "inferences alone").

3. **Allen Cannot Prove a Causal Connection Between Her Purported Protected Activity and The Reasoning Behind Chanel's Decision To Terminate Her Employment**

Even if Allen's complaints to Zernik and/or Human Resources could be deemed a protected activity and she had evidence that Cirkva was aware of her complaints, her retaliation claim still must fail because she cannot demonstrate a causal connection between the complaint and her termination. *See, e.g., Meder v. City of N.Y.,* 2007 WL 1231626, at *6 (E.D.N.Y. Apr. 27, 2007) (*prima facie* retaliation case failed because plaintiff "proffers no admissible evidence linking the offending actions to any retaliatory animus"); *see also Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (retaliation fails because no evidence "which would fulfill the final requirement of a casual nexus between [plaintiff's] filing of the agency complaint … [and the adverse action]"). Given that the discussion to eliminate the Samples Coordinator position began in the fall of 2011 (Def.'s 56.1, ¶ 33) and Allen's alleged protected activity occurred in December of 2011, Allen is unable to establish the requisite retaliatory animus.

4. **Allen Fails to Demonstrate That The Articulated Reason For Her Termination Was A Pretext For Retaliation**

Even if Allen could establish a *prima facie* case of retaliation - which she cannot - for the same reasons discussed above, she is unable to demonstrate the existence of a genuine issue of

material fact that Chanel's articulated reason for her termination - namely, the straightforward elimination of her position - was a pretext for retaliation in response to her alleged protected activity. That is, she cannot prove that Chanel did not believe in the truth of the reason for their employment action. Further, Allen introduces no evidence whatsoever of a retaliatory motive by anyone at Chanel. *See Male v. Tops Markets, LLC*, 2011 WL 2471449, at *8-9 (W.D.N.Y. June 22, 2011) (plaintiff's conclusory allegations disputing the reason for adverse action were insufficient to show the defendant was "actually motivated by a desire to retaliate against him for his [] alleged protected activity"). Finally, Allen's subjective belief as to why Chanel terminated her employment is, in any event, insufficient to establish pretext. *See Blanco v. Brogan*, 620 F. Supp. 2d. 546, 562-63 (S.D.N.Y. 2009) (noting that even if credited, plaintiff's subjective impressions cannot establish pretext); *see also Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 130 (2d Cir. 1996) (plaintiff failed to show pretext where he offered no evidence that performance reviews were retaliatory, and defendant proffered several legitimate reasons for plaintiff's termination). Accordingly, summary judgment should be awarded to Chanel on Allen's retaliation claim and her Complaint dismissed, in its entirety.

## D.    ALLEN WAS UNJUSTLY ENRICHED AND MUST RETURN CHANEL'S MONEY

Without speaking with anyone at Chanel, let alone confirming Chanel's acceptance of the revised contract terms, Allen unilaterally modified the pre-signed Release Agreement presented to her at the time of termination.[5]  (Def.'s 56.1, ¶¶ 54-57, 61-63).  Unaware of the modifications made in the Altered Release Agreement, Chanel reasonably proceeded as though the Agreement included all of the terms originally presented to Allen.  (*Id.*, ¶¶ 65-67).  Specifically, Chanel authorized the separation payment in the net amount of $14,940.19 and provided for five months

---

[5] Solely for purposes of this motion, Chanel will assume (without waiving any counterclaims), that Allen did not intend to defraud or deceive Chanel.  Moreover, Chanel reserves the right to proceed on all of its counterclaims, some of which were pled in the alternative.

of COBRA coverage. (*Id.*, ¶ 69). In the end, however, no meeting of the minds was reached between Chanel and Allen as to a separation package in that Chanel and Allen did not have the same understanding of the agreement being reached. Thus, Allen had no entitlement otherwise to the payment and benefits she received. Rather, she received them at Chanel's expense and equity and good conscience require that it be returned. In other words, Allen has been unjustly enriched.

1. **There Was No Meeting of the Minds Between Allen and Chanel**

Chanel presented Allen with an unmodifiable pre-signed hard-copy Release Agreement. (*Id.*, ¶¶ 54, 55). Allen returned the Altered Release Agreement having made modifications without Chanel's consent, or mere knowledge. (*Id.*, ¶ 66.) Indeed, Allen readily admits that she has no knowledge as to whether anyone at Chanel ever became aware of the changes she made to the Release Agreement. (*Id.*, ¶ 67). As a result, a contract between Allen and Chanel was never formed.

A contract is formed when at least two parties with legal capacity give their mutual assent to specific terms with an exchange of consideration. *See Saeed Epakchi DMD, P.C. v. Araghi*, 2012 WL 3217172, at *2 (N.Y. Sup. Ct. Suffolk Cnty. Aug. 8, 2012). Mutual assent – often referred to as the "meeting of the minds" – must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms. *See id.* In other words, for a contract to exist, a binding agreement must have been made as to all essential terms. *See Silber v. N.Y. Life Ins. Co.*, 92 A.D.3d 436, 439 (1st Dep't 2012) ("Courts look to the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract. An agreement must have sufficiently definite terms and the parties must express their assent to those terms.") (citations omitted).

There was no mutual assent or meeting of the minds as between Chanel and Allen regarding the terms - specifically the general release provision - in the Altered Release Agreement.  Thus, there was no binding contract.

## 2.    Allen Received A Benefit At Chanel's Expense

Since Chanel believed that Allen had agreed to the terms of the Release Agreement originally presented to her, it authorized the separation payment and COBRA coverage as provided for in the presented terms.  (Def.'s 56.1, ¶ 69).  Specifically Allen was mailed and cashed a check in the amount of $14,940.19 and received five months of COBRA coverage.

"To prevail on a claim for unjust enrichment in New York, [Chanel] must establish 1) that [Allen] benefitted; 2) at [Chanel's] expense; and 3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000).  Here, the undisputed facts make clear that Allen received a financial benefit at Chanel's expense - one that she was not contractually or otherwise entitled to.  *See Bradkin v. Leverton*, 26 N.Y.2d 192, 196 (1970) (finding that if plaintiff fails to prove a valid contract, the court may allow recovery "to assure a just and equitable result," where "the defendant received a benefit from the plaintiff…under circumstances which, in justice, preclude him from denying an obligation to pay.").  Given that Chanel in good faith believed that the originally presented Release Agreement had been agreed to by Allen and that Allen failed to inform Chanel of the unilateral modifications she made within the Altered Release Agreement, equity and good conscience require restitution.  *See Miller v. Schloss*, 218 N.Y. 400, 407 (1916) (recovery for unjust enrichment is permissible "when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which *ex aequo et bono* belongs to another.").

For these reasons, summary judgment should be granted for Chanel as to its counterclaim for unjust enrichment.

## CONCLUSION

Allen has no competent evidence from which a reasonable jury could find in her favor on her discrimination and retaliation claims.  Therefore, Chanel is entitled to summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, dismissing the Complaint in its entirety.  Chanel, on the other hand, has proven as a matter of law that Allen has been unjustly enriched and requests that summary judgment as to its counterclaim for unjust enrichment be granted in Chanel's favor.  Chanel further requests that this Court grant it its costs and attorneys' fees incurred in this case, and such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      November 13, 2014

SEYFARTH SHAW LLP

By: */s/ Lorie E. Almon*
    Lorie E. Almon
    lalmon@seyfarth.com
    Caitlin S. Ladd
    cladd@seyfarth.com
    620 Eighth Avenue, Suite 3200
    New York, New York 10018
    (212) 218-5500

*Attorneys for Defendant Chanel, Inc.*