UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

ANU ALLEN,

                Plaintiff,

  -Against-

CHANEL, INC.,

                Defendant.
------------------------------------------------------------------------x

ECF CASE

12-CV-6758(RPP)

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND FOR JUDGMENT ON THE COUNTERCLAIM FOR UNJUST ENRICHMENT

THE LAW OFFICES OF CHRISTOPHER THOMPSON
Christopher Thompson, ESQ. (CT-9436)
Attorney for Plaintiff – Anu Allen
33 Davison Lane East
West Islip, New York 11795
Tel: (631) 983-8830
Fax: (631) 983-8831

Dated: West Islip, New York
       December 15, 2014

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................. 1

STANDARD OF REVIEW… ............................................................... 3

ARGUMENT ..................................................................................... 3

1.  THERE IS SUFFICIENT EVIDENCE, WHEN VIEWED IN THE LIGHT MOST FAVORABLE TO ALLEN, UNDER THE ADEA, A REASONABLE JURY COULD CONCLUDE THE DEFENDANT FIRED ALLEN DUE TO HER AGE, RACE AND SEX.

A.  Allen Can Establish a *Prima Facie* case through both Direct and Indirect Evidence.

B.  Legitimate Business Reason.

C.  Despite Chanel's Proffered Non-Discriminatory Reason for Allen's Termination, Plaintiff Provides Sufficient Evidence to Create a Genuine Dispute of Whether this Reason is Pretextual.

   1. Klein and Zernik's Discriminatory Animus is what Motivated the Ultimate Decision Maker, Thereby Causing Klein and Zernik's Intended Result.
   2. Allen has Provided Sufficient Evidence of Klein and Zernik's Discriminatory Animus.
   3. Inconsistent and False Explanation for Termination.

UNJUST ENRICHMENT COUNTERCLAIM……………………………….. 10

# TABLE OF AUTHORITIES

**CASES**                                                                                                                                                                    **Page(s)**

*Altaire Pharm., Inc. v. Rose Stone Enters.*, No. 13-CV-4373 (JFB)(WDW), 2013 U.S. Dist. LEXIS 170411, 2013 WL 6235862, at *7 *(E.D.N.Y. Dec. 3, 2013)*..............9

*Am. Int'l Group, Inc. v. London Am Int'l Corp.*, 664 F.2d 348, 351 (2d Cir. 1981)..............3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)...........3

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)..............9

*Bickerstaff v. Vassar College*, 196 F.3d 435, 450 (2d Cir. 1999)..............6

*Bucalo v. Shelter Island Union Free School District*, 691 F.3d 119, 128-29 (2d Cir. 2012)..............3

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986)..............3

*D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 195 (2d Cir. 2007)..............4

*Daniels v. Pioneer Cent. School Dist.*, 2012 WL 1391922, at *3 (W.D.N.Y April 20, 2012)..............7

*Giannullo v. City of New York*, 322 F.3d 139, 141 (2d Cir. 2003)..............3

*Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000)..........9

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)..............4

*Lindsey v. Walgreen Co.*, 615 F.3d 873 (7th Cir. 2010)..............7

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000)..............8

*Saviano v. Town of Westport*, 2011 WL 4561184 (D. Conn. Sept. 30, 2011)..............7

*Simmons v. Sykes Enters.*, 647 F.3d 943, 949 (10th Cir. 2011)........7

*St. Mary's Honor Ctr. V. Hicks*, 509 U.S.502, 511 (1993)............ 8

*Staub v. Protocol Hospital*, 560 F. 3d 647, 651
(7th Cir. 2009)................................................................ 5

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S.248, 253 (1981)..... 4

*Tolan v. Cotton*, 572 U.S. ___, 134 S.Ct. 1861, 1866 (2014).......... 3

*Wrobel v. Country of Erie*, 692 F.3d 22, 27 (2d Cir. 2012)............. 3

*Zann Kwan v. Andalex Group, LLC*, 737 F.3d 834, 846
(2d Cir. 2013).................................................................. 8

*Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 381
(2d Cir. 2001).................................................................. 4

**STATUTES**

Fed. R. Civ. P. 56(c)......................................................... 3

**OTHER AUTHORITIES**

The *Age Discrimination in Employment Act* ("ADEA")........... 1

The *Civil Rights Act of 1866*, as amended, 42 U.S.C. § 1981
("§ 1981")....................................................................... 1

The *New York State Human Rights Law* ("NYSHRL")............. 1

Title VII of the Civil Rights Act of 1964 ("Title VII")............... 1

# PRELIMINARY STATEMENT

Plaintiff Anu Allen ("Ms. Allen") respectfully submits this Memorandum of Law in opposition to Defendant, Chanel, Inc.'s ("Chanel's"), motion for summary judgment, seeking the dismissal of plaintiff's claims of discrimination and retaliation and granting Chanel's counterclaim for unjust enrichment.

Chanel is mistaken in their belief Allen cannot produce admissible evidence sufficient to support her discrimination claims that her employment was terminated because of her age, race and sex and in retaliation for her protected activity, in violation of *Title VII of the Civil Rights Act of 1964* ("Title VII"), the *Civil Rights Act of 1866*, as amended, 42 U.S.C. § 1981 ("§ 1981"), the *Age Discrimination in Employment Act* ("ADEA") and the *New York State Human Rights Law* ("NYSHRL"). It is noteworthy defendant makes no argument in support of summary judgment related to Plaintiff's NYSHRL claims.

The undisputed admissible evidence viewed in the light most favorable to Plaintiff demonstrates summary judgment must be denied and this case must be presented to a jury for trial. In short, Chanel has failed to demonstrate a reasonable jury could not return a verdict in favor of Allen, the nonmoving party.

Although, on the surface, it is claimed Allen's position as a Samples Coordinator with Chanel was eliminated as part of a corporate restructuring based on Chanel's business needs at the time, the truth is Allen's termination was actually the result of age, and race discrimination and retaliation under the pretext of a corporate restructure which never took place.

In fact, Allen has been a thorn-in-the-side of Chanel ever since she was sexually assaulted in the early years of her career when she was invited into the offices of a major decision maker at Chanel at a time when Allen was pursuing a career in modeling and

1

film – while working her full time position as an executive receptionist at Chanel's worldwide headquarters on 57th Street in Manhattan.

Allen, a young, single, minority female objected to the inappropriate touching of her breasts by Jacques Helleu ("Helleu") and complained to her friend, Dan Rosenberg, an in-house attorney at Chanel. Allen did not sue Chanel or Helleu but was instead given a different position away from the executive receptionist position into the mailroom so she could be away from Helleu. Allen was told that her "perk" would be that she would not have to come into work on days when Helleu, who worked in the Paris, France office was in the New York office. This "perk" however was never honored and for a total of nineteen (19) years Allen continued to work at her job knowing she had been violated.

There came a point leading up to Allen's termination that a discussion was had between Susanna Klein ("Klein") and Cat Porter ("Porter") wherein the circumstances of Allen's sexual harassment claims were detailed while Klein was trying to figure out how to respond to Allen's job performance for 2011. Klein had a subsequent conversation with Meagan Glickman ("Glickman") to determine how to address Allen's performance in light of what had been described as Allen's "job security" resulting from her having been sexually assaulted in the past. In those discussions, Klein and Glickman exchanged numerous emails many of which were also sent to Stephanie Zernik ("Zernik") the Senior Vice President of Chanel's Fashion Wholesale division. Specifically, one of these email discussing how to deal with Allen in which Klein stated: " I have some ideas about our approach that I'd like to talk about rather than e-mail" and requested a meeting with Glickman, face-to-face. That idea, of course, was the termination of Allen under the rouse that it was because of a corporate restructuring based on Chanel's business needs at that time. Incredibly, Zernik claims in her declaration: "Ms. Allen had complained to me [her] about working with Klein because she felt she was moody and difficult to work for. Ms. Allen never complained that Klein was discriminating against her and Ms. Allen never mentioned her race, age or sex" and yet Glickman testified she followed up with both Klein and Zernik about Allen's claims of discrimination against both of them.

## STANDARD OF REVIEW

It is the long established rule that summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986). However, the burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Am. Int'l Group, Inc. v. London Am Int'l Corp.*, 664 F.2d 348, 351 (2d Cir. 1981). The Second Circuit has made it clear if the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied. *Giannullo v. City of New York*, 322 F.3d 139, 141 (2d Cir. 2003)(noting that the "non-movant is not required to rebut an insufficient showing"). And of course, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) see also, *Wrobel v. Country of Erie*, 692 F.3d 22, 27 (2d Cir. 2012). The Court must view the evidence at the summary judgment stage in the light most favorable to [the non-moving party] with respect to the central facts of the case." *Tolan v. Cotton*, 572 U.S. ___, 134 S.Ct. 1861, 1866 (2014).

It is well settled in the Second Circuit that age discrimination claims under the ADEA are analyzed under the very familiar *McDonnell Douglas* three-part "burden-shifting" analysis. See, *Bucalo v. Shelter Island Union Free School District*, 691 F.3d 119, 128-29 (2d Cir. 2012) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

## ARGUMENT

1. **THERE IS SUFFICIENT EVIDENCE, WHEN VIEWED IN THE LIGHT MOST FAVORABLE TO ALLEN, UNDER THE ADEA, A REASONABLE JURY COULD CONCLUDE THE DEFENDANT FIRED ALLEN DUE TO HER AGE, RACE AND SEX.**

A. **Allen Can Establish a *Prima Facie* case through both Direct and Indirect Evidence.**

3

In order to establish a *prima facie* case of age, race or sex discrimination a plaintiff must establish four elements: 1) plaintiff was within the protected group; 2) plaintiff was qualified for the position; 3) plaintiff experienced an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of age [race and sex] discrimination. *Bucalo*, 691 F.3d at 128-29.

The first three elements are not and cannot be disputed here. Indeed, Allen is clearly within the protected group. She was 44 years of age at the time of her termination and therefore in a group of forty and above and she is Indian/Asian. Furthermore, Allen was qualified for the position of full-time Samples Coordinator, as Chanel employed her in that position, without incident, from 2007 to 2012; and Allen experienced an adverse employment action when Chanel terminated her. Therefore, the only issue remaining for Allen to make a *prima facie* case of age, race and sex discrimination under the ADEA and McDonnell Douglas, is to show her termination occurred under circumstances giving rise to an inference of discrimination.

The Second Circuit has held the mere fact of an employer replacing a terminated employee with a significantly younger employee is sufficient, standing alone, to establish an inference of age discrimination to meet this element of the *prima facie* case. *D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 195 (2d Cir. 2007). This low standard is probably so, as the Supreme Court explained in *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981), the plaintiff's burden at the initial stage of McDonnell Douglas is "not onerous." Further, as the Second Circuit stated in *Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001), "[w]e have characterized the evidence necessary to satisfy this initial burden as 'minimal' and 'de minimus,' and the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the prima facie stage of the [ADEA] analysis." While the Supreme Court in *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009), held that a plaintiff must ultimately prove that his age was the but-for cause of his termination, given that the Second Circuit decided Bucalo three years after Gross, nothing in Gross alters the standard concerning the minimal evidence needed at the first stage of the

4

McDonnell Douglas analysis. *See, Bucolo*, 691 F.3d at 128 ("The requirements to establish a prima facie case are 'minimal' … and a plaintiff's burden is therefore 'not onerous.'")(internal citations omitted).

Here, it is not disputed that Chanel replaced the duties performed by Allen, then forty-four (44) years old, with an intern substantially younger than Allen. Therefore, this fact by itself is sufficient to establish an inference of age discrimination to satisfy the fourth element of a prima facie case under the ADEA and McDonnell Douglas. Additionally, besides this simple fact, the record is replete with direct evidence of Klein and Zernik's discriminatory motivation. Indeed, as stated herein, Klein and Zernik – the individuals who Allen reported to – and who had the authority to terminate Allen – frequently and in close proximity to Allen's termination, made derogatory comments about Allen's age and race and the impact Klein and Zernik believed that Allen's age and race had on her job performance. Thus, combined with the evidence of the age of Allen's replacement, this direct evidence of Klein and Zernik's discriminatory animus is certainly enough for a reasonable jury to infer that Allen's termination occurred under circumstances giving rise to an inference of discrimination – both age and race.

### B. Legitimate Business Reason.

Allen, for purposes of this stage of the McDonnell Douglas analysis only, will assume, Defendant put forward what could be considered a legitimate business reason for Allen's termination - although analysis of this alleged legitimate business reason cannot possibly survive this courts scrutiny. The burden, based on this assumption, thus shifts back to Allen to meet part three of analytical framework. See, Bucalo, 691 F.3d at 129.

### C. Despite Chanel's Proffered Non-Discriminatory Reason for Allen's Termination, Plaintiff Provides Sufficient Evidence to Create a Genuine Dispute of Whether this Reason is Pretextual.

Should the defendant carry its burden of proffering a permissible non-discriminatory reason for the termination, the plaintiff may then prove that this reason offered was not the true reason, but instead was merely a pretext for discrimination. *Tex. Dep't of Cmty*, 450 U.S. at 248; *Bucalo*, 691 F.3d at 129.

### 1. Klein and Zernik's Discriminatory Animus is what Motivated the Ultimate Decision Maker, Thereby Causing Klein and Zernik's Intended Result.

As is relevant here, a "cat's paw" theory of liability is well defined by the Court of Appeals for the Seventh Circuit:

> "'Cat's paw theory' is a way of proving employment discrimination when the decisionmaker herself is admittedly unbiased; under the theory, discriminatory animus of a nondecisionmaker is imputed to the decisionmaker where former has singular influence over latter and uses that influence to cause adverse employment action."

*Staub v. Protocol Hospital*, 560 F. 3d 647, 651 (7th Cir. 2009), rev'd for failing to recognize cat's paw theory of liability, 131 S.Ct. 1186 (2011). Indeed, the Supreme Court, in reversing the Seventh Circuit, held that the 'cat's paw' theory of liability may apply in the context of a *Title VII* case. 562 U.S. ___, 131 S. Ct. at 1187.

The Second Circuit, in *Bickerstaff v. Vassar College*, in a case involving promotion in the workplace under *Title VII*, has also recognized the cat's paw theory of liability:

> "We recognize that the impermissible bias of a single individual at any stage of the promoting process ay taint the ultimate employment decision in violation of Title VII … this is true even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias has played a meaningful role in the promoting process."

196 F.3d 435, 450 (2d Cir. 1999). While the Second Circuit has not held that the cat's paw theory of liability may apply in the ADEA context, other circuits to have considered

6

this issue have found that it may. Indeed, recent decisions of both the Tenth and Seventh Circuit have endorsed the cat's paw theory of liability as it applies to DEA claims. *Simmons v. Sykes Enters.*, 647 F.3d 943, 949 (10th Cir. 2011); *Lindsey v. Walgreen Co.*, 615 F.3d 873 (7th Cir. 2010). Moreover, at least one district court in the Second Circuit has also found liability in the ADEA context based on the cat's paw theory. *Saviano v. Town of Westport*, 2011 WL 4561184 (D. Conn. Sept. 30, 2011).

Lastly, Plaintiff has not uncovered any case holding that a cat's paw theory of liability may not be applied in the ADEA context. *See, Daniels v. Pioneer Cent. School Dist.*, 2012 WL 1391922, at *3 (W.D.N.Y April 20, 2012) ("[i]t is significant that [the defendant] has cited, and this Court could find, no cases, in any circuit, where a court has found that the cat's paw theory could not be applied to ADEA claims.").

Here, it is the cat's paw theory upon which Plaintiff asserts one of its reasons for claiming the adverse employment action occurred under circumstances giving rise to an inference of age, race and/or sex discrimination.

In this case, it is even easier to drawn such an inference of discrimination in the adverse employment action, since Barbara Cirkva, the President of Fashion, Watches and Fine Jewelry at Chanel, admits the decision to eliminate Allen's position was made with Stephanie Zernik in consultation with Human Resources.

### 2. Allen has Provided Sufficient Evidence of Klein and Zernik's Discriminatory Animus.

The applicability of cat's paw to Allen's ADEA claims asserted herein is not simply an academic exercise, as Allen has clearly provided evidence of Klein and Zernik's age and race bias. Indeed, as discussed above, the record is filled with evidence that Klein and Zernik had a history of making invidious age and race related comments to and about Allen which continued up until nearly the date of Allen's termination. Klein and Zernik lied about their knowledge of Allen's discrimination complaints made to Glickman. Klein, with Zernik's participated and schemed to find a solution to the Allen

7

problem in a face-to-face meeting with Glickman because Klein was concerned about revealing her idea in writing. Lastly, Klein rewrote Allen's job description and received input from other management personnel to change the name of Allen's position and the details of the description but acknowledged in her testimony that the changes to the job description were in fact changes to an existing position and not the creation of a new and distinct position as claimed in defendants defense. In short, the changes to the existing position were made as a cover-up of the pretextual reasons for the elimination of Allen's job not Allen's position.

### 3. Inconsistent and False Explanation for Termination.

In employment discrimination cases, it is "*permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147 (2000). (emphasis in original). Moreover, the Supreme Court has stated that:

> "The factfinder's disbelief of the reasons put forth by the defendants may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination."

*St. Mary's Honor Ctr. V. Hicks,* 509 U.S.502, 511 (1993)(emphasis in original).

Furthermore, in providing ways that a discrimination-plaintiff may prove bias or pretext, the Second Circuit has held that this may be accomplished by "demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action. For such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason." *Zann Kwan v. Andalex Group, LLC,* 737 F.3d 834, 846 (2d Cir. 2013).

Additionally, as this Court held in a case involving racial discrimination under *Title VII*:

8

> "Were a jury to find on these facts that there was disparate treatment in [the employer]s disciplining of plaintiff when compared to similarly situated employees, it could also find that [the employer]'s proffer of a non-discriminatory reason for [the employee's] dismissal was pretextual."

*Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000).

Here, in accordance with that law, there is ample evidence in the record that Klein and Zurnik, in seeking to amend Allen's existing job description and wanting to discuss Allen's past and future situations in person and not in an email were designed to terminate Allen for a reason different from the proffered non-discriminatory reason.

Of course, a jury can decide for Defendant or for Plaintiff but it is up to the trier of the facts to decide what evidence is credible. It is respectfully submitted based on the discrepancies in the reasons for the elimination of Allen's position in light of her complaints about discrimination based on her age and race that this case must be tried as material issues of fact exist.

## **UNJUST ENRICHMENT COUNTERCLAIM**

Cases dealing with unjust enrichment in New York are uniform in their recognition of three elements of the claim: "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)).

As it relates to the case at bar, an unjust enrichment claim "may be asserted only in the absence of an agreement between the parties--be it oral, written, or implied-in-fact." *Altaire Pharm., Inc. v. Rose Stone Enters.*, No. 13-CV-4373 (JFB)(WDW), 2013 U.S. Dist. LEXIS 170411, 2013 WL 6235862, at \*7 (E.D.N.Y. Dec. 3, 2013) (citing *Beth Israel Med. Ctr.*, 448 F.3d at 586-87).

Defendant has not met its burden. There is no dispute the parties are seeking to enforce an agreement although there is a material dispute over the terms. The suppot for Plaintiff's position is argued best by defendants own actions as they have counterclaimed for breach of contract. In fact, in a previous motion currently pending before this Court, defendant is seeking to amend the complaint to add additional breach of contract claims.

Furthermore, there is a material issue of fact as to whether equity and good conscience require restitution.

Clearly, Allen signed the Separation and Release Agreement and did, in fact, release defendant from numerous claims – while preserving for herself the right to sue for discriminatory conduct only. She provided a release for any claims for physical injuries at Defendant's premises as well as any claim for overtime pay for example.

## **CONCLUSION**

For the foregoing reasons, Chanel's motion must be denied and plaintiff should have such other and further relief as is just and proper.

Dated: West Islip, New York
December 15, 2014

Respectfully Submitted,

By: _____
Christopher Thompson, ESQ. (CT-9436)
ctalawman@aol.com
33 Davison Lane East
West Islip, New York 11795
1 (631) 983-8830
*Attorney for Plaintiff*