UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANU ALLEN,

                              Plaintiff,

      -against-

CHANEL, INC.,

                              Defendant.
------------------------------------------------------------X

12 Civ. 6758

**OPINION & ORDER**

**LORETTA A. PRESKA, Chief U.S.D.J.**

    **I.   FACTS**[1]

Plaintiff Anu Allen ("Plaintiff") was born on February 24, 1969 and is of Asian or Indian descent. (Def.'s Statement of Undisputed Material Facts Pursuant to Rule 56.1 ("Def.'s 56.1") ¶ 1, ECF No. 55.) Chanel, Inc. ("Chanel" or "Defendant"), a New York corporation, is a manufacturer and distributor of luxury goods. (Id. ¶ 2.) From approximately 1993 to 2000, Plaintiff worked as a receptionist for Defendant. (Id. ¶¶ 5, 6.) She was promoted to Office Services Coordinator in January, 2001, a position created for her. (Id. ¶¶ 7, 8, 11.) After serving as an Office Services Coordinator for six years, she underwent a formal interview process and was selected to become a Samples Coordinator. (Id. ¶¶ 12, 13.)

In approximately August, 2011, Plaintiff began reporting to Susanna Klein ("Klein"), Executive Director of Ready to Wear & Wholesale Events & Training. (Id. ¶ 16.) Klein reported to Stephanie Zernik ("Zernik"), Senior Vice President of Fashion Wholesale, and Zernik

---

[1] Pursuant to the standard for summary judgment motions, all facts are construed in favor of the non-moving party, here the Plaintiff. See Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995).

1

reported to Barbara Cirkva ("Cirkva"), President of Fasion, Watches and Fine Jewelry. (Id.) Plaintiff alleges that Klein was "extremely difficult" to work with, "everyone was afraid of her," and that Klein was "unfair, not liked, aggressive, abrasive, rude, disrespectful and out of line." (Id. ¶¶ 23, 24.) Plaintiff had complained to Megan Glickman ("Glickman"), Director of Human Resources for Fashion, Watches and Fine Jewelry, about Plaintiff's working relationship with Klein on various occasions beginning in 2009. (Id. ¶ 42.) Plaintiff recalls Klein's telling her that "since [Plaintiff] was not white, not married and getting old that she would be just another single-mother like all of the other minorities," and Zernik's telling her that Chanel "had too many Asian and minority workers and not enough Jewish girls like [Zernik and Klein]." (Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mot.") at 16, ECF No. 56; Compl. ¶¶ 17, 18, ECF No. 1.) (See also Allen Dep. Submitted as Ex. K to Decl. of Christopher Thompson ("Allen Dep."), 120:4-121:5, 161:9-162:9, ECF No. 59.)

When Zernik arrived at Chanel in April of 2011, she reviewed the structure of the Fashion Wholesale Division. (Def.'s 56.1 ¶ 27.) In the summer of 2011, Zernik was involved in the transferring of the Training division outside of Fashion Wholesale. (Id. ¶ 29.) In August, 2011, Defendant reduced the number of trunk shows—events requiring the use of sample products. (Id. ¶ 31.) Following these changes, Defendant claims that Plaintiff's position, Samples Coordinator, was unnecessary. Zernik and Klein discussed different ways to structure the department, including revising the Samples Coordinator job description and eliminating the position altogether. (Id. ¶¶ 34-35, 37, 52.) Zernik made the decision to eliminate the Samples Coordinator position and terminate Plaintiff's employment. (See id. ¶ 32.) Zernik sought and received final approval from Cirkva and the Human Resources department. (Id. ¶ 38.)

2

At Plaintiff's termination meeting, she was given a hard copy Separation and Release Agreement ("Agreement") signed by one of Defendant's representatives. (Id. ¶ 54.) The Agreement provided that it "may be modified only by a writing signed by both parties." (Id. ¶ 59.) In exchange for waiving her right to bring certain lawsuits against Defendant, "including" employment discrimination and harassment claims on the basis of "race, color, . . . sex, sexual orientation, age, . . . and any other legally protected characteristic . . . and any and all claims under any contract, statute, regulation, agreement, duty or otherwise," Plaintiff would receive, inter alia, $14,940.19 and five months of COBRA coverage. (Id. ¶ 56.) These benefits exceeded what Plaintiff would have otherwise received under her employment contract.

Unbeknownst to Defendant, Plaintiff retyped the page of the Agreement containing the waiver clause in the same font, words, and margins, except she changed the word "including" to "excluding." (Id. ¶ 63.) Plaintiff then initialed each page of the Agreement, signed and returned it. (Id. ¶ 64.) Plaintiff claims to have put a 1-inch blank, yellow sticky note on the page of the Agreement containing the modified release provision before returning it to Defendant, but she did not contact Defendant to discuss any changes. (Def.'s 56.1 ¶¶ 64-67.) Defendant claims it neither received the sticky note nor noticed any alterations to the Agreement. (Id.)

After receiving Plaintiff's signed document, Glickman authorized transmission of a separation payment and sent a check to Plaintiff that Plaintiff received and retained. (Id. ¶ 69.) Approximately five months later, on September 2, 2012, Plaintiff brought the instant action against Defendant, alleging that Defendant violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., the Civil Rights Act of 1866, 42 U.S.C. § 1981, et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and the New

York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, et seq. Plaintiff seeks back pay, front pay, lost benefits, and recoupment of her legal costs.

Defendant moved to dismiss on November 12, 2012, introducing documentation that was not referenced (or barely referenced) in the Complaint. (ECF No. 9.) On June 4, 2013, Judge Patterson exercised his discretion, pursuant to Rule 12(d), to convert this motion to dismiss into a motion for summary judgment. Judge Patterson then denied Defendant's motion without prejudice on the grounds that Plaintiff had not knowingly, voluntarily, or willfully waive her right to file a discrimination claim as a matter of law. (ECF No. 22.) Defendant filed an Answer on June 18, 2013 with affirmative defenses and counterclaims. (ECF No. 23.)[2]

On November 13, 2014, Defendant moved for summary judgment, seeking dismissal of Plaintiff's claims of discrimination and retaliation, and approval of Defendant's counterclaim for unjust enrichment. (Def.'s Mot.) Plaintiff opposed on December 15, 2014 (Mem. of Law in Opp'n to Def.'s Mot. (Pl.'s Opp'n), ECF No. 61) and Defendant replied on December 22, 2014 (Reply Mem. in Further Supp. of Def.'s Mot. ("Def.'s Reply"), ECF No. 66).

---

[2] During the course of discovery, Defendant turned over documents from a supposedly privileged and confidential file maintained by one of Defendant's in-house attorneys. (Mem. of Law in Supp. of Def.'s Mot. to Amend and for Sanctions at 5-6, ECF No. 40.) At least one of these documents detailed an internal sexual harassment complaint filed by Plaintiff in December, 1998. (Id.) Plaintiff found these documents sitting on a copy machine, made and kept duplicates, and left the originals. (Id.) On September 26, 2014, shortly after learning the manner in which Plaintiff obtained the documents, Defendant moved to amend its counterclaims to include breach of contract and conversion. (Id. at 1.) Defendant also moved for sanctions. (Id.) Plaintiff opposed on October 14, 2014 (ECF No. 41), and Defendant replied on October 20, 2014 (ECF No. 47.) On March 18, 2015, the Court granted Defendant's motion to amend and denied Defendant's motion for sanctions. (ECF No. 70.) Defendant filed an Amended Answer and additional Counterclaims on April 2, 2015. (ECF No. 71.)

## II. DISCUSSION

There are three issues before the court. First, whether Defendant discriminated against Plaintiff on the basis of sex, age, and/or race when terminating her position. Second, whether Defendant's termination of Plaintiff's position was retaliatory. Third, whether Plaintiff was unjustly enriched by receiving and retaining from Defendant, inter alia, a severance payment and five months of COBRA coverage. The following will address each issue in turn.

### a. Standard for Summary Judgment

Courts will grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party holds the initial burden of demonstrating that there is no genuine issue of material fact. F.D.I.C. v. Great American Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010). When the moving party has met this initial burden, the opposing party must set forth specific facts showing that there is a genuine issue for trial, and cannot rest on mere allegations or denials of the facts asserted by the movant. Davis v. State of New York, 316 F.3d 93, 100 (2d Cir. 2002). The Court must "view the evidence in the light most favorable to the non-moving party, and may grant summary judgment only when no reasonable trier of fact could find in favor of the non-moving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995).

### b. Plaintiff's Discrimination Claims

#### i. Legal Standard

In the Second Circuit, courts analyze sex, age, and race discrimination claims under Title VII, the ADEA, § 1981, and the NYSHRL in a three-step burden shifting framework. See

Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-07 (1973)).

In the first step, the plaintiff bears the burden of proving a prima facie case of discriminatory discharge by alleging "(1) at the time of discharge she was [a member of a protected class], (2) her job performance was satisfactory, (3) she was discharged, and (4) her discharge occurred under circumstances giving rise to an inference of discrimination on the basis of [her status as a member of a protected class]." Grady v. Affiliated Cent., Inc., 130 F.3d 553, 559 (2d Cir. 1997). "The requirements to establish a prima facie case are "minimal," St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993), and a plaintiff's burden is therefore "not onerous," Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). See also Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 128-29 (2d Cir. 2012).

In the second step, the defendant bears the burden to show a non-discriminatory reason for termination that "would support a finding that unlawful discrimination was not the cause of the employment action." Hicks, 509 U.S. at 502. "However, while the presumption shifts the burden of *production* to the defendant, [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Bucalo, 691 F.3d at 128-29 (alteration in original) (citations and internal quotation marks omitted).

In the third step, the plaintiff must present evidence for the factfinder to infer that the employer was motivated "in whole or in part" by discrimination. Grady, 130 F.3d at 559-60. The employer's reason for taking the employment action cannot be proven a pretext for discrimination unless plaintiff can show both "that the employer's reason was false, and that discrimination was the real reason." Hicks, 509 U.S. at 515. With regard to ADEA and

6

NYSHRL claims, "the plaintiff retains the burden of persuasion to establish that age was the "but-for" cause of the employer's adverse action." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009).[3]

### ii. Whether Plaintiff has Proven an Inference of Discrimination

The parties do not dispute that Plaintiff has satisfied the first three requirements of a discriminatory discharge claim because Plaintiff was over 40 years of age at the time of her discharge, of Indian or Asian descent, female, and qualified for the position that she held for approximately five years. (Pl.'s Opp'n at 4; Def.'s Mot. at 12-13.) The parties dispute whether Plaintiff was discharged under circumstances that give rise to an inference of discrimination on the basis of age, race, or sex.

Without offering any citations to the record, Plaintiff argues that Defendant replaced her with a substantially younger unpaid intern and that "the mere fact of an employer replacing a terminated employee with a significantly younger employee is sufficient, standing alone, to establish an inference of age discrimination to meet this element of the prima facie case." (Pl.'s Opp'n at 4.) Assuming arguendo that this is an accurate statement of the law, there is no evidence in the record that Defendant had in fact hired an intern to replace Plaintiff. (Def.'s Reply at 3.) The first time that Plaintiff introduced the idea that she was replaced by an intern is in her briefing. In fact, Defendant submitted, and Plaintiff conceded that Plaintiff's duties were absorbed by existing paid employees. (Id.; Def.'s 56.1 ¶ 53; Pl.'s Statement of Undisputed

---

[3] "The law governing ADEA claims has been held to be identical to that governing claims made under the NYHRL . . . we assume, without deciding, that the Supreme Court's Gross decision affects the scope of the NYHRL law as well as the ADEA." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 105 n.6 (2d Cir. 2010) (citations omitted).

7

Material Facts Pursuant to Rule 56.1(b) ("Pl.'s 56.1") ¶ 39, ECF No. 63.)  Without evidence to support the assertion that Plaintiff was replaced by an intern, the Court cannot find that the use of an intern was sufficient for an inference of age discrimination.

Regardless, Plaintiff can raise an inference of discrimination on other grounds.  Although not referenced in her opposition brief, Plaintiff recalls Klein stating that "since [Plaintiff] was not white, not married and getting old that she would be just another single-mother like all of the other minorities," and Zernik stating that Defendant employed "too many Asian and minority workers and not enough Jewish girls like [Zernik and Klein]." (Compl. ¶¶ 17-18; Def.'s Mot. at 16.; see also Allen Dep. at 120:4-121:5, 161:9-162:9.)

Assuming that these comments were made, and drawing all reasonable inferences in favor of the non-moving party, these comments imply that Plaintiff's supervisors, although women approximately the same age as Plaintiff, made judgments about Plaintiff relating to her race and age, and that Plaintiff's supervisors expressed an interest in hiring more white and Jewish employees.  Given the low bar for establishing a prima facie case for discrimination, these comments, and others that Plaintiff alleged relating to her being excluded because she did not come from a particular background (see Def. 56.1 ¶ 71), for example, made in advance of Defendant's termination of Plaintiff's position, are sufficient for the Court to draw an inference of age and race discrimination.[4]

---

[4] Taken in aggregate, and given the totality of Plaintiff's relationship with her supervisors, these comments are not "stray remarks," meaning—they are not isolated or innocuous. See Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir. 1998) (noting that "stray remarks" alone are insufficient for a prima facie case of discrimination, but holding that the defendant's statements should not be read in isolation.).

8

In her briefing and during her deposition, Plaintiff does not argue that she was discriminated against based on sex. (See Def.'s Mot. at 13 n.4; Pl.'s Opp'n at 4-5.) Although Klein's comment that "since [Plaintiff] was not white, not married and getting old[,] she would be just another single-mother like all of the other minorities" could be construed to implicate gender, Plaintiff does not allege sex discrimination beyond citing Title VII in her Complaint. (See Allen Dep. 120:4-121:5.) Additionally, when the decision-maker is in the same protected class(es) as the plaintiff-employee, courts can draw inferences against discriminatory intent. Baguer v. Spanish Broad. Sys., Inc., 2010 WL 2813632, at *14 (S.D.N.Y. July 12, 2010) aff'd sub nom. Baguer v. Spanish Broad. Sys., Inc., 423 F. App'x 102 (2d Cir. 2011). Klein, Zernik, and Cirkva are all female. Because Plaintiff failed to argue this claim and because the Court declines to draw an inference of discriminatory intent on this issue, Defendant's motion for summary judgement regarding sex discrimination is granted. See Bellegar de Dussuau v. Blockbuster, Inc., 2006 WL 465374, at *7 (S.D.N.Y. Feb. 28, 2006); Douglas v. Victor Capital Group, 21 F.Supp.2d 379, 393 (S.D.N.Y. 1998).

### iii. Whether Defendant has Provided a Non-Discriminatory Reason for Terminating Plaintiff's Position

In the second step, the defendant bears the burden to demonstrate a non-discriminatory reason for terminating the plaintiff. Hicks, 509 U.S. at 507. Eliminating a position for economic reasons is not discriminatory. DiCola v. SwissRe Holding (N. Am.), Inc., 996 F.2d 30, 32-3 (2d Cir. 1993).

Here, Defendant argues that Plaintiff's position as Samples Coordinator was eliminated due to corporate restructuring and never filled. (Def.'s Mot. at 17, 18.) Defendant notes that the previous focus of Plaintiff's division shifted and the number of "trunk shows"—an event

9

occupying Plaintiff's time and efforts—was being reduced. (Def.'s 56.1 ¶ 31). While Defendant initially contemplated revising the Samples Coordinator position description instead of eliminating it altogether, such a revision never transpired. (Def.'s 56.1 ¶¶ 35, 37, 52.) Moreover, Defendant claims that the responsibilities previously handled by Plaintiff as the Samples Coordinator were absorbed by account representatives and another division of the company. (Def.'s 56.1 ¶ 53; P.'s 56.1(b) ¶ 39.)

Plaintiff conceded that Defendant has satisfied its burden, writing: "[Plaintiff] . . . assume[s] [that] Defendant put forward what could be considered a legitimate business reason for [Plaintiff's] termination." (Pl.'s Opp'n at 5.)

In light of Defendant's argument and Plaintiff's concession, the Court holds that Defendant has satisfied its burden of providing a non-discriminatory reason for terminating Plaintiff's employment.

### iv. Whether Plaintiff has Proven that Defendant was Motivated by Discrimination

In the third step, the plaintiff must present evidence for the factfinder to infer that the employer was motivated "in whole or in part" by discrimination. Grady, 130 F.3d at 559-60. The employer's reason for taking the employment action cannot be proven a pretext for discrimination unless plaintiff can show both "that the employer's reason was false, and that discrimination was the real reason." Hicks, 509 U.S. at 515. With regard to ADEA and NYSHRL claims, "the plaintiff retains the burden of persuasion to establish that age was the "but-for" cause of the employer's adverse action." Gross, 557 U.S. at 177. The plaintiff may demonstrate "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's

proffered legitimate, nonretaliatory reasons for its actions." Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 (2d Cir. 2013).

Here, Plaintiff makes three arguments. First, Plaintiff reiterates that Plaintiff was subjected to age and race discrimination. (Pl.'s Opp'n at 7-8.) Second, Plaintiff argues that Defendant was motivated by discriminatory animus. (Id. at 6-7.) Plaintiff claims that Zernik's and Klein's "discriminatory animus" towards Plaintiff should be imputed to Cirkva, the person with ultimate authority to terminate Plaintiff's position. (Id.) Plaintiff relies on the "cat's paw" theory of liability, whereby the "discriminatory animus" of non-decisionmakers, here Zernik and Klein, can be imputed to the decisionmaker when the non-decisionmakers have "singular influence" over the employee and "use[] that influence to cause the adverse employment action." (Id. (citing Staub v. Proctor Hosp., 560 F.3d 647, 651 (7th Cir. 2009) rev'd and remanded, 562 U.S. 411 (2011)).)[5] Third, Plaintiff argues, without citing to the record, that "there is ample evidence in the record that Klein and Zurnik [sic], in seeking to amend [Plaintiff's] existing job description and wanting to discuss [Plaintiff's] past and future situations in person and not in an email were designed to terminate [Plaintiff] for a reason different from the proffered non-discriminatory reason." (Def.'s Opp'n at 8-9.)

Plaintiff's arguments fail. Because the parties do not dispute that Defendant has provided a non-discriminatory reason for terminating Plaintiff's position, Plaintiff must submit evidence

---

[5] The Second Circuit has recognized that "the impermissible bias of a single individual at any stage of the promoting process may taint the ultimate employment decision in violation of Title VII." Bickerstaff v. Vassar Coll., 196 F.3d 435, 450 (2d Cir. 1999), as amended on denial of reh'g (Dec. 22, 1999). As noted above, Defendant's motion for summary judgment on Plaintiff's Title VII claim has been granted. It is not clear whether the Second Circuit recognizes this theory of imputing bias in the race or age discrimination context.

from which a jury could find that this reason was pretextual. Even if Klein and Zernik considered amending Plaintiff's job description and spoke in person as opposed to over email, these business activities do not constitute evidence that Defendant's proffered reason for terminating Plaintiff was false and that discrimination was the real reason. Amending a job description and meeting in person are activities consistent with developing a restructuring plan. Furthermore, given the previous holding, Plaintiff has not offered any evidence to suggest that Plaintiff would not have been fired but-for her age.

### c. Plaintiff's Retaliation Claims

While Plaintiff alleges she suffered retaliation in her Complaint, she did not oppose Defendant's motion for summary judgment on this issue. In fact, Plaintiff has not addressed this issue at all in her briefing. (See Def.'s Reply at 8.)

Because Plaintiff failed to oppose Defendant's motion, Plaintiff's retaliation claims are dismissed. See Bellegar de Dussuau, 2006 WL 465374, at *7; Douglas, 21 F.Supp.2d at 393.

### d. Defendant's Claims for Breach of Contract and Unjust Enrichment

There are two issues: whether Plaintiff and Defendant had formed a valid contract and whether Plaintiff was unjustly enriched. The following will address each in turn.

#### i. Whether the Parties Formed a Valid Contract

A valid contract has not been formed unless there has been a meeting of the minds on all material terms. Silber v. New York Life Ins. Co., 92 A.D.3d 436, 439 (2012). "Fraud in the execution occurs where there is a "misrepresentation as to the character or essential terms of a proposed contract" and a party signs without knowing or having a "reasonable opportunity to know of its character or essential terms." Hetchkop v. Woodlawn at Grassmere, Inc., 116 F.3d 28, 31-32 (2d Cir. 1997) (quoting Restatement (Second) of Contracts § 163 (1981).) Fraud in the

12

execution prevents the parties from achieving mutual assent and, thus, prevents the parties from forming a valid contract.

Here, because Plaintiff modified a material term, the general release provision, and obscured the change from Defendant, the Agreement was fraudulently executed. Thus, the parties never achieved a meeting of the minds, and a valid contract was never formed.

### ii. Whether Plaintiff was Unjustly Enriched

A claim for unjust enrichment requires that one party benefited at another's expense, and "equity and good conscience require restitution." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 586 (2d Cir. 2006). Here, because the parties had not formed a valid contract, Plaintiff was not entitled to the benefit conferred to her at Defendant's expense: a check for $14,940.19 and five months of COBRA coverage. It would be unjust for Plaintiff to retain these benefits because Plaintiff did not waive her right to sue Defendant for discriminatory discharge.

### III.   CONCLUSION

For these reasons, Defendant's motion for summary judgment and counterclaim for unjust enrichment [ECF No. 51] are granted. Plaintiff is ordered to turn over $14,940.19 plus accrued interest, and premium payments for five months of COBRA coverage plus interest, in the manner designated by Defendant. Defendant shall, on notice to Plaintiff, submit a proposed judgment with an explanation of the amount of the interest and COBRA payments.

SO ORDERED.

Dated: June 26, 2015

_Loretta A. Preska_
Loretta A. Preska
Chief U.S.D.J.