

University of California, Berkeley
School of Law
353 Law Building
Berkeley, CA 94720-7200
(510) 642-5049
ccrump@clinical.law.berkeley.edu
www.law.berkeley.edu/SamuelsonClinic

October 21, 2020

*Via email*

The Honorable Loretta A. Preska
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Courtroom 12A
New York, NY 10007-1312

      Re:    *Anu Allen v. Chanel, Inc.*, Case No. 12-cv-6758 (LAP)

Dear Judge Preska:

Thank you for inviting Free Law Project to share its perspective on the Court's August 21, 2020 order in this case (the "Removal Order"), which required seven search engines to de-index materials related to this case and ordered thirteen publishers—including Free Law Project—to remove all content related to the case from their websites. *See* Sealed Order, Sept. 30, 2020 (hereinafter "Sept. 30 Order"). The Removal Order followed a March 10, 2020 order sealing the entirety of the above-captioned case (the "Sealing Order"). *See* Order, Mar. 10, 2020, ECF No. 92. To our knowledge, none of the affected search engines or publishers were parties to this case, nor did they receive notice or an opportunity to be heard until after the issuance of the Removal Order. We hereby respond to the Court's invitation to affected non-parties to provide comments on the Removal Order. *See* Sept. 30 Order.

Free Law Project is a California non-profit public benefit corporation and federally recognized 501(c)(3) public charity. We provide free, public, and permanent access to primary legal materials on the Internet for educational, charitable, and scientific purposes. Using our tools and datasets, journalists investigate topics of public interest, parties and lawyers conduct cost-effective legal research, and academics gain insight into the state and federal civil and criminal justice systems. Among other projects, Free Law Project runs CourtListener.com, a free and publicly available website with a searchable database of approximately 4.4 million judicial opinions, as well as 145 million docket entries from over 7 million federal court cases. Dockets on CourtListener.com incorporate court filings gathered from PACER; judicial opinions that have been archived from various public datasets and courts' websites directly; and oral argument recordings that are archived directly from federal appellate court websites.[1]

---

[1] *See* CourtListener, *Data Coverage — What's in CourtListener?*, https://www.courtlistener.com/coverage/.

CourtListener.com's copy of the docket for this case is among the webpages identified in the attachment to the Removal Order.[2] As we understand the Removal Order, it directs Free Law Project to remove its copy of the docket for this case and "any other materials discussing the above-captioned action." Removal Order at 2–3. The materials CourtListener.com had posted from this case were: the case docket listing all of the documents and actions in the matter between September 6, 2012 and March 6, 2020; Opinion and Order (June 4, 2013), ECF No. 22; Opinion and Order (June 26, 2015), ECF No. 74; Notice of Motion Requesting Sealing (Jan. 1, 2020), ECF No. 86; and Order (Jan. 21, 2020), ECF No. 87. In addition, CourtListener.com has published other judicial decisions and briefs that cite the above-captioned matter by name.[3]

Having made millions of court records freely available online since 2010, we regularly receive content-removal requests and grapple with these issues. Drawing on this experience, we have developed a straightforward removal policy.[4] Our policy states our belief that "there is a compelling public interest in making the law broadly available to all," but it also recognizes that "there can be competing privacy interests of individuals and organizations" that sometimes warrant removal. Our policy therefore states that "We will not remove any public document from our database without a court order." However, the Removal Order is broader than any removal order we have previously received.

We have two main concerns with the Removal Order:

1. Federal Rule of Civil Procedure 65 and due process limit the circumstances under which non-parties can be bound by court orders. Because Free Law Project is a non-party that obtained case materials independently, and was not given notice or an opportunity to be heard prior to the Removal Order's issuance, the Removal Order violates Rule 65 and due process.

2. The First Amendment protects Free Law Project's right to publish the information it lawfully obtained from the government related to the above-captioned matter.

---

[2] The CourtListener.com docket page for this case was listed among the Google search results that the Removal Order required be de-indexed and removed from Google's cache. Removal Order at 3.

[3] These materials are other court records—including both opinions and pleadings—that cite and, in some cases, describe the case. Search Results for "Allen v. Chanel," CourtListener, https://www.courtlistener.com/?q=%22allen+v.+chanel%22&order_by=score+desc&type=r&case_name=-allen+-chanel&page=2 (last accessed Oct. 20, 2020). Free Law Project does not interpret the Removal Order to require removal or alteration of those documents.

[4] CourtListener, *Removal Policy* (effective since Aug. 24, 2017), https://www.courtlistener.com/terms/#removal.

In addition, we believe that this Court should:

3. Docket all of the correspondence with and filings by the parties and non-parties related to the Removal Order to ensure a record exists documenting this Court's consideration of important matters of constitutional and statutory interpretation.

4. Unseal this case, including the docket and underlying documents, so that the public has the benefit of access to these judicial records. Free Law Project is particularly concerned that litigation over issues of constitutional and statutory interpretation, and the scope of the Court's authority to bind non-parties, is currently happening wholly in secret.

### I. The Removal Order Exceeds This Court's Authority Under Federal Rule of Civil Procedure 65 and Violates Due Process

Federal Rule of Civil Procedure 65 restricts the issuance of injunctions to parties, "the parties' officers, agents, servants, employees, and attorneys," Fed. R. Civ. P. 65(d)(2)(B), and those "in active concert with" them, *id.* at (d)(2)(C). Because Free Law Project does not fall into any of these groups, this Court cannot subject it to the Removal Order.

It is beyond dispute that Free Law Project is not a party, nor is it an officer, agent, servant, employee, or attorney of a party. To qualify as acting "in active concert with" any of these individuals, "the nonparty must be legally identified with that [party], or, at least, deemed to have aided and abetted that [party] in the enjoined conduct. *Microsystems Software, Inc. v. Scandinavia Online AB*, 226 F.3d 35, 43 (1st Cir. 2000); *see also Paramount Pictures Corp. v. Carol Pub. Grp., Inc.*, 25 F. Supp. 2d 372, 384 (S.D.N.Y. 1998) (same). The purpose of the rule is to ensure that parties do not evade injunctions by enlisting third parties: "[Parties] may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." *Regal Knitwear Co. v Nat'l Lab. Rels. Bd.*, 324 U.S. 9, 14 (1945). In short, "those who are acting independently of the enjoined party and whose own rights have not been adjudged cannot be bound by an injunction." *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 195 (2d Cir. 2010).

Free Law Project can in no sense be considered to be "in active concert" with Chanel or the plaintiff. Free Law Project independently obtained the materials subject to the Removal Order from the Court's publicly available docket as part of its ongoing efforts to make the law and legal materials freely available to the public. This cannot be considered acting in concert with any party. Concluding otherwise would mean that Free Law Project and other law aggregators such as Westlaw and Lexis are in "active concert" with the parties in each and every case within their databases. Fed. R. Civ. P. 65(d)(2)(C). Similarly, it would mean that search engines such as Google, Bing, and DuckDuckGo are in "active concert" with everyone who publishes a record that is indexed in their search engines. *Id.* This stretches the idea of acting in "active concert" beyond the breaking point. Thus, this Court's Removal Order exceeds the bounds of Rule 65 to the extent it applies to Free Law Project. *Id.*

Relatedly, issuing the Removal Order without giving Free Law Project notice and an opportunity to be heard violates our due process rights. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Oberlander v. Perales,* 740 F.2d 116, 120 (2d Cir. 1984) ("Due process has two indispensable components—notice and an opportunity to be heard.") (abrogated by statute on other grounds). Here, Free Law Project received no notice that its rights were being adjudicated, let alone an opportunity to be heard prior to issuance of the Removal Order. This does not comport with due process.

### II. The Removal Order Violates Free Law Project's First Amendment Rights

The Removal Order also violates Free Law Project's First Amendment rights. There is a First Amendment right to publish information that the government itself discloses. *Florida Star v. B.J.F.*, 491 U.S. 524, 541 (1989). All of the relevant documents and docket information that Free Law Project published originated on this Court's public docket. Free Law Project published these materials on CourtListener.com as part of its ongoing efforts to make court records freely available to the public. The First Amendment forbids courts from ordering they be removed.

The key Supreme Court case on point is *Florida Star*. There, the Supreme Court held that it violated the First Amendment for a newspaper to be held civilly liable for publishing the name of a rape victim it had obtained from a publicly released police report. *Id.* at 526. The Court reiterated the principle from its earlier case law that "if a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order." *Id.* at 533 (quoting *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 103 (1979)). The Court noted that the newspaper had obtained the information lawfully—from a publicly disclosed police report. *Id.* at 534. It set out the principle that, when the public lawfully obtains truthful information from the government itself, imposing liability is not an adequately tailored method of advancing a compelling need. *Id.* at 537–38.

*Florida Star* built on the Court's earlier precedents to solidify the principle that there is a First Amendment right to publish information obtained from the government itself. *Id.* at 530–31 (reviewing prior decisions). Two of these decisions held that the First Amendment protects the publication of information obtained from disclosures in court proceedings or court records. *See Okla. Publ'g Co. v. Dist. Ct.*, 430 U.S. 308, 310 (1977) ("[T]he First and Fourteenth Amendments will not permit a state court to prohibit the publication of widely disseminated information obtained at court proceedings which were in fact open to the public."); *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 496 (1975) ("At the very least, the First and Fourteenth Amendments will not allow exposing the press to liability for truthfully publishing information released to the public in official court records."). Since its decision in *Florida* Star*,* the Court has expanded its

protections. *Bartnicki v. Vopper*, 532 U.S. 514, 517–18 (2001) (holding that the First Amendment protects broadcasting the contents of an illegally intercepted communication, at least where the broadcaster did not participate in the interception and the information pertains to a matter of public concern).

Although the Second Circuit has not applied *Florida Star* to publicly docketed written materials, it has applied it to information disclosed in open court. *United States v. Quattrone*, 402 F.3d 304, 213 (2d Cir. 2005) (Sotomayor, J.) ("The district court's order barring publication of jurors' names not only subjected appellants to a prior restraint on speech, but also infringed their freedom to publish information disclosed in open court.").

It is beyond dispute that the Removal Order requires Free Law Project to remove material that originated from a government source, namely, the Southern District of New York's public court records. Under these circumstances, this Court cannot then compel Free Law Project to remove material after-the-fact through its Removal Order. As the Supreme Court remarked, "[o]nce the government has placed . . . information in the public domain, 'reliance must rest upon the judgment of those who decide what to publish or broadcast.'" *Florida Star*, 491 U.S. at 538 (quoting *Cox Broad.*, 420 U.S. at 496).

Earlier this year the Supreme Court had an opportunity to consider the legal publishing activities of another non-profit, Public.Resource.Org, and reviewed numerous precedents that illustrate the long history in this country of considering it vital that the work of the judiciary be public and accessible. In discussing precedent indicating that judges could not hold a copyright in their written opinions, the Court wrote that "whole work done by the judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all." *Georgia v. Public.Resource.Org*, 140 S. Ct. 1498, 1506–07 (2020) (quoting *Banks v. Manchester*, 128 U. S. 244, 253 (1888) and citing *Nash v. Lathrop*, 6 N.E. 559 (Mass. 1886)). The Court went on to say that "[e]very citizen is presumed to know the law, and it needs no argument to show that all should have free access to its contents." *Id.* at 1507 (quotation marks and alterations omitted) (quoting *Nash*, 6 N.E. at 560).

Free Law Project is not unsympathetic to the plaintiff. Free Law Project's Removal Policy explains that we are willing to block search engines from indexing pages on our site.[5] For the vast majority of individuals that are concerned about their name appearing in a court document, having that information removed from the indices of general-purpose search engines, such as Google, Bing, or DuckDuckGo, is an adequate remedy. This prevents most casual searchers or prospective employers from encountering the information, but allows those conducting legal research using specialized databases, such as CourtListener.com, to continue making use of the documents.

---

[5] In response to a January 3, 2020 request from the plaintiff, and according to its removal policy, Free Law Project voluntarily asked all major search engines to remove this case and its related documents from their results.

### III. The Filings Related to the Removal Order Should Be Docketed

Free Law Project also respectfully requests that the Court immediately docket all documents and correspondence related to concerns raised about the Removal Order. The September 30 Order states that "[a]fter the Court has received all submissions, it will decide whether they are to be docketed." *See* Sept. 30 Order at 2. This Court should docket all of these submissions, as well as the correspondence that led to the September 30 Order and any correspondence subsequent to the submissions related to the Removal Order. Litigation about significant constitutional and statutory questions should not occur outside the record.

Rule 79 of the Federal Rules of Civil Procedure requires the Clerk of Court to "keep a record known as the 'civil docket,'" which must document "each civil action in the docket." Fed. R. Civ. P. 79(a)(1). Among other things, the Clerk of Court is required to record "papers filed with the clerk" in civil cases. *See id.* at (a)(2). Additionally, this District's *Electronic Case Filing Rules & Instructions* are clear that "[a]ll orders, decrees, judgments **and proceedings of the Court will be filed** . . . **and entered on the docket** kept by the Clerk." S.D.N.Y., *Electronic Case Filing Rules & Instructions* § 4.1 (Apr. 1, 2020) (emphasis added).[6] Finally, the Court's individual practices indicate that "communications with chambers shall be by letter" and that "[a]ll letters **shall be filed**" either electronically on ECF or by sending them directly to chambers in some circumstances (e.g., where materials must be filed under seal or *pro se* parties are involved). *See* Individual Practices of Judge Loretta A. Preska ¶ I.A (Mar.17, 2020) (emphasis added).[7]

While the Court directly solicited the views of various non-parties affected by the Removal Order, the District's ECF rules and this Court's individual practices indicate that non-parties would normally be required to formally file any positions or information necessary for determining issues in a pending matter. Thus, letters like this should be docketed by the Clerk of Court per Rule 79's record keeping requirements. *See* Fed. R. Civ. P. 79(a)(2).

Further, as described in this letter, the current stage of litigation presents weighty matters of constitutional and statutory interpretation. This Court should ensure that correspondence and submissions from non-parties regarding the Removal order are promptly docketed to ensure that this court's consideration of these matters does not proceed without a record. As described more below, the public's right of access to the courts includes a right to view this correspondence.

---

[6] https://www.nysd.uscourts.gov/sites/default/files/pdf/ecf_rules/ECF%20Rules%20040120%20-%20COVID%20v2.pdf.

[7] https://www.nysd.uscourts.gov/sites/default/files/practice_documents/LAP%20Preska%20INDIVIDUAL%20RULES%2031720_0.pdf.

6

### IV. The First Amendment and Common Law Rights of Access Require That This Case Be Unsealed

Finally, Free Law Project respectfully requests that the Court unseal this case, including the docket sheet, all materials listed on the docket, and all materials related to adjudication of the Removal Order (collectively, "the Sealed Materials"). These items are all judicial records. Both the First Amendment and common law presumptions of access apply to the materials. Under either standard, the public's interest in access outweighs any interest in sealing.[8]

### A. The Sealed Materials Are Judicial Records

The first question courts in this circuit must ask when considering whether a document may be sealed is whether it is a "judicial record." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016). That is because there is a strong presumption in favor of access to judicial records that "is secured by two independent sources: the First Amendment and the common law."[9] *Id.* at 141. A "judicial record" is "a filed item that is relevant to the performance of the judicial function and useful in the judicial process." *Id.* at 139 (quotation marks and citation omitted). While not everything that is filed with a court is a judicial record, the standard is not high. To determine whether a document is a judicial record, courts "evaluate the relevance of the document's specific contents to the nature of the proceeding and the degree to which access to the document would materially assist the public in understanding the issues before the court, and in evaluating the fairness and integrity of the court's proceedings." *Id.* at 139–40 (quotation marks and alterations omitted) (quoting *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 166–67 (2d Cir.2013)).

All of the Sealed Materials appear to be judicial records. The docket in this case is clearly a judicial record. *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2004) (indicating that docket sheets are judicial records). So are the various orders this Court has issued. *See, e.g.*, *In re Appl. of Jason Leopold to Unseal Certain Elec. Surveillance*

---

[8] Free Law Project notes that no formal motion is necessary for the Court to unseal the docket or the Sealed Materials. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 141 (2d Cir. 2004) ("[W]e see no reason why the absence of a motion of a party to the litigation or some third party requesting that a seal or protective order be lifted should remove a federal court's ability to monitor and modify its previous orders in exercise of its 'supervisory power over its own records and files.'" (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)) (also citing *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 307 (2d Cir. 1997))).

[9] "The presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995). In the view of the Second Circuit, without access to the "documents that are used in the performance of Article III functions," "the public [can] have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings." *Id.*

*Applications & Orders*, 964 F.3d 1121, 1128 (D.C. Cir. 2020) (stating that "[t]here is no doubt" that court orders are judicial records); *United States v. Mentzos*, 462 F.3d 830, 843 n.4 (8th Cir. 2006) (denying motion to file opinion under seal because "the decisions of the court" are presumptively "a matter of public record"); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) ("[I]t should go without saying that the judge's opinions and orders belong in the public domain."). In fact, given the Second Circuit's broad holding in *Bernstein* that "pleadings—even in settled cases—are Judicial records subject to a presumption of access," 814 F.3d at 140, *all* of the materials entered on the docket are properly considered judicial records.

Finally, although the records related to the adjudication of the Removal Order have not been filed directly with the Clerk of Court, they too are judicial records. Now that the Court has ordered Free Law Project and others to remove certain documents from their websites or search results, the retroactive sealing of the docket and the Removal Order have become "issues before the court." *Id.* at 139. By their nature, submissions discussing the propriety of the Removal Order, the continued sealing of the docket, or the sealing of particular records "would materially assist the public in understanding the issues before the court, and in evaluating the fairness and integrity of the court's proceedings." *Id.* Thus, the submissions related to the adjudication of the Removal Order are judicial records.

### B. There Is a First Amendment Right of Access to the Sealed Materials

The Sealed Materials trigger the First Amendment presumption of access. The First Amendment protects the public's right of access to judicial records and whether it attaches in a given scenario can be assessed under two tests in the Second Circuit. "The first approach considers experience and logic: that is, whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* at 141 (quotation marks and citation omitted). "The second approach considers the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." *Id.* at 141 (quotation marks and citation omitted).

The Second Circuit has concluded that the First Amendment right of access "applies to civil as well as criminal proceedings." *Hartford Courant*, 380 F.3d at 86. It has also already concluded, as a categorical matter, that the First Amendment right of access applies to various types of material that typically appear in civil litigation. This includes docket sheets, *id.*; complaints, *Bernstein*, 814 F.3d at 141; and documents filed in connection with a summary judgment motions, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006). Thus, at minimum, the First Amendment standard applies to many of the materials covered by the Sealing Order.

Where, as here, the First Amendment right of access attaches, "documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *In re N.Y.*

*Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) (quoting *Press-Enter. Co. v. Superior Court* ("*Press-Enterprise II*"), 478 U.S. 1, 2 (1986)). When applying this standard, judges are required to "review the documents individually and produce specific, on-the-record findings that sealing is necessary to preserve higher values." *Brown v. Maxwell*, 929 F.3d 41, 48 (2d Cir. 2019) (citation and quotation marks omitted). Also, the sealing should not be more expansive than necessary to protect the compelling interest. *In re N.Y. Times Co.*, 828 F.2d at 116.

As a preliminary matter, the Court does not appear to have made a document-by-document determination that sealing is necessary. In addition, the government does not have a compelling interest in secrecy in this case. Based on the Sealing Order, Free Law Project understands that the Court is interested in protecting the plaintiff's future employment prospects, particularly given that the plaintiff alleges that she has been the victim of misconduct by her attorney. But employment disputes are routinely adjudicated by federal courts; if all such disputes were sealed where a plaintiff or defendant had a reputational interest in it, sealing would become the norm rather than the exception. Recognition of such an expansive "compelling interest" would turn the First Amendment presumption of access on its head. To the extent that this case is anomalous in that there are allegations of attorney misconduct, the plaintiff has a remedy, however imperfect, in malpractice law or disciplinary proceedings.

In addition, the Sealing and Removal Orders are not narrowly tailored to advance this interest. First, the Orders are under-inclusive because they do not apply to LexisNexis's and Westlaw's legal research systems.[10] This is deeply problematic because it is discriminatory against those with fewer financial resources. Individuals using expensive commercial legal research services will have access to these judicial records, but those availing themselves of CourtListener.com's free, not-for-profit service will be deprived of them.

Second, the Orders are also under-inclusive because they do not cover the numerous other judicial records in other cases that cite to the opinions in this case and mention the plaintiff by name.[11]

At the same time, the Orders are too broad. Sealing an entire case is overbroad where more limited sealing, such as redaction of the plaintiff's name, would suffice.

---

[10] A Lexis search for "Allen v. Chanel" turns up 23 cases, 20 other filings, a practice note on terminations in New York (part of *Exceptions to At-Will Employment* by Peter T. Shapiro of Lewis Brisbois Bisgaard & Smith LLP), and a citation in 6 Corbin on Contracts § 25.20 (which covers "Fraud, Illegality and Other Disqualifying Matters" as exceptions to the parol evidence rule). The same search in Westlaw turns up 25 cases, 15 trial court documents, and seven secondary sources.

[11] *See supra* nn. 3 & 10.

### C. There Is a Common Law Right of Access to the Sealed Materials

If the Court concludes that certain items on the docket are not entitled to a First Amendment presumption of access, this Court must still determine whether they should be made public under the common law right of access.

Under the common law, courts have long recognized "a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). While the presumption of access is not absolute, it attaches when a court determines a given document is a judicial record. *Lugosch*, 435 F.3d at 119.

At that stage, the court must assess "the weight of that presumption." *Id*. "The weight of the presumption is a function of (1) the role of the material at issue in the exercise of Article III judicial power and (2) the resultant value of such information to those monitoring the federal courts, balanced against competing considerations such as the privacy interests of those resisting disclosure." *Bernstein*, 814 F.3d at 142 (quotation marks and citations omitted). In assessing a document's "role in the performing of Article III duties," the "locus of the inquiry is, in essence, whether the document is presented to the court to invoke its powers or affect its decisions." *Id*. at 142 (quotation marks omitted).

Under the common law test, the balance weighs in favor of disclosure in this case. The docket and all but the most mundane materials filed were "presented to the court to invoke its powers or affect its decisions" or, in the case of opinions, they are expressions of its powers and decisions. *Id*. These materials are also of significant value to those who monitor the work of the federal courts. Free Law Project, an organization dedicated to making legal materials freely available online, has an interest in making sure its database includes materials from cases, such as this one, that touch on employment law. The fact that this case has been written about in several commentaries, including some that have been ordered removed, demonstrates the case's broader importance. So does the fact that opinions from this case have been cited in judicial opinions in other cases. This case has presented important teachable moments, which are all lost in light of the Sealing and Removal Orders.

On the other hand, the countervailing interest is not strong. As discussed above, if the desire to avoid reputational harm stemming from an employment dispute is enough to justify sealing of documents such as dockets and orders, there will be vastly more secrecy within the court system. To the extent attorney misconduct was involved, malpractice suits or disciplinary proceedings are the appropriate remedy.

*   *   *

Based on the foregoing, Free Law Project respectfully requests that the Court:
(1) rescind the Removal Order as it pertains to Free Law Project and CourtListener.com;
(2) immediately docket all documents and correspondence related to the adjudication of the Removal Order; and (3) unseal the Sealed Materials.

Respectfully,

_/s/ Catherine Crump_
Catherine Crump (CC-4067)
Megan Graham (5400460)
Samuelson Law, Technology & Public Policy Clinic
353 Law Building
University of California, Berkeley
School of Law
Berkeley, CA 94720-7200
ccrump@clinical.law.berkeley.edu
(510) 292-6860

*Counsel for Free Law Project*